PRATER *v.* PRATER.

(*Knoxville.* October 15, 1888.)

1. HOMESTEAD. *Widow's right of. Non-residence. Elopement.*

A woman who has, without cause, deserted her husband, and eloped with another man, and taken up permanent residence with him in another State, and there continued to live in adultery with him, until her husband's death, forfeits her right, as widow, to homestead in lands owned by the husband at his death.

Constitution construed: Art. XI., § 11.

Code construed: §§ 2935, 2943 (M. & V.); §§ 2114*a*, 2119*a* (T. & S.).

Cases cited and approved: Emmett *v.* Emmett, 14 Lea, 370; Hawkins *v.* Pearce, 11 Hum., 45; Lesenbee *v.* Holt, 1 Sneed, 50.

2. SAME. *Same. Wife's domicile.*

In such case the wife has acquired a domicile in the State of her actual residence, independent of her husband's domicile.

Cases cited and approved: 36 Tex., 661; 9 Tex., 643.

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. S. T. LOGAN, J.

TAYLOR & HOOD for Complainant.

WAT. M. COCKE for Defendant.

CALDWELL, J. This is a bill for dower and homestead.

The Chancellor refused the claim of dower, but allowed that of homestead.

Complainant acquiesced in the decree; but the defendant has, by writ of error, brought to this Court for revision so much of it as adjudged complainant entitled to homestead.

It is alleged in the bill and admitted in the answer that complainant Margaret Prater and Ambrose Prater intermarried "many years ago" in this State, and lived here together, as man and wife for "several years;" that, thereafter, they were separated, for a long period of time, and never lived together again; that at the time of his death, in January, 1887, and for about five months previous thereto, he was cohabiting with the defendant, Laura, as his wife; that he died without issue, and testate, having bequeathed and devised the whole of his very small estate to the defendant, whom he, in his will, called his "beloved wife;" that the defendant has, since his death, continued to reside upon and claim as devisee the only real estate he left, being a house and lot in Knoxville, occupied by him and her as their home at the time of his death; and finally, that complainant, insisting upon her rights as the lawful widow, had formally dissented from the will before she filed this bill.

It is further alleged in the bill that Ambrose Prater, while living with complainant as his wife, became enamored of another woman (not the defendant), cohabited with and had several children by her; that this caused the separation between him and complainant, and that thereafter he pre-

tended to marry the defendant, and did live and cohabit with her as his wife until his death, though they both knew that complainant was still "alive and the lawful wife of Ambrose Prater."

The defendant, in her answer, says that she was married to the deceased in August, 1886; that he always represented to her that he had been legally divorced from the complainant, and she positively denies that she knew that complainant still claimed to be the lawful wife of Ambrose Prater.

She says, further, that she has no knowledge of the alleged improper relations of Ambrose Prater with the woman referred to in the bill; but she denies that such was the cause of the separation. She says, on the contrary, that complainant herself became grossly unfaithful, and committed "repeated acts of adultery" with John Huchison and other men; that she abandoned Ambrose Prater and took up her abode with said Huchison and lived with him in the city of Knoxville for a time, after which, in the year 1881, she eloped with said Huchison and went with him to Ashville, North Carolina, where they continued to live and cohabit as man and wife, and where they still so live and cohabit, "unless they have recently removed" to some other place; and that the deceased acquired the house and lot, in which complainant seeks to set up rights of homestead and dower, long after the separation from complainant, and when he believed that he had been lawfully divorced from her and legally married to the defendant.

The answer concludes as follows:

"Now, therefore, the complainant, at the time of the death of the deceased, not being a resident of this State, but a citizen of the State of North Carolina; and having more than fifteen years before left the domicile and abandoned the home of the deceased, of her own cause, and without any fault of the deceased; and having eloped and lived in adultery with said John Huchison for these ten years, she is, in consequence thereof, forever debarred from dower and homestead in the real estate of the deceased."

Complainant set the cause for hearing upon bill and answer; and thereby, under a familiar rule of Chancery practice, admitted the truth of the answer.

Upon the record thus made up the Chancellor heard the cause, with the result already stated.

There being no appeal from the decree as to dower, *the question for our decision is, whether or not the complainant is entitled to homestead under the facts of this case.*

We think she is not, for more reasons than one:

*First,* The complainant is a non-resident of this State, and being such is not entitled to the benefit of our exemption laws.

It is true that she states in the caption of her bill that she is a resident of Blount County, Tennessee; but that statement is not established by proof, nor admitted in the answer.

On the other hand, it is distinctly stated in the

answer that complainant was a non-resident of this State and a citizen of North Carolina when Ambrose Prater died, which was less than twelve months before the filing of the bill; and, again, that she and Huchison resided in Ashville, in the latter State, from 1881, and were still residing there, when the answer was filed in February, 1888, "unless they have recently removed" to some other place.

These statements, which are taken as admitted to be true, establish the non-residence of complainant. They show that her residence was in another State when Ambrose Prater died, that it had been there for many years prior to his death, and that it was still there when the answer was filed, unless recently changed.

The place of residence being once established is presumed to continue until a change is shown to have been made. In this case the burden of showing change is upon the complainant, yet she has offered no proof whatever upon the subject.

The allegation of residence in Tennessee, made in the caption of the bill, is not *evidence* of a change of residence from North Carolina to this State; yet that is all that appears in this record to overcome the facts and presumption just mentioned, and to sustain the argument of counsel for complainant that she is in fact a citizen of this State.

It has long and uniformly been held by this Court that our exemption laws were enacted for

the protection of citizens of this State only, and that non-residents cannot avail themselves of their benefit.

It was so held, *as to personalty,* in *Hawkins* v. *Pearce,* 11 Hum., 45, and in *Lisenbee* v. *Holt,* 1 Sneed, 50; and, *as to claim of homestead,* in *Emmett* v. *Emmett,* 14 Lea, 370.

The Emmett case is particularly in point, for in that case, as in this, the claimant was the non-resident widow of a man who was a citizen of this State, and who died here, in the possession and occupancy of the property, in which the claim of homestead was asserted. In that case the claim was refused by this Court alone upon the ground that the claimant was a non-resident.

In its moral aspect that was a much stronger case for the allowance of homestead than this is. There the husband had abandoned the wife, while here the wife abandoned the husband.

The fact that Ambrose Prater was a citizen of this State and entitled to homestead at the time of his death does not help the camplainant's case, or make her any the less a non-resident.

We concede that, as a general rule, the domicile of the husband is, in contemplation of law, the domicile of the wife; but, of necessity, there are many exceptions to that rule. This case furnishes a striking exception, and forcibly illustrates the injustice that would flow from a universal application of the rule.

No effect was given to this rule in the Emmett case, just mentioned. In fact, it was not referred

to at all in that case, but the real residence of the wife was treated as controlling. So we treat it in this case.

With respect to the unity of domicile as bearing upon the homestead right, Judge Thompson says:

"But, as the domicile of the husband draws with it the domicile of the wife, the fact that a wife remains out of the State with the consent and approval of her husband has been held not to preclude her, after his death, from asserting a homestead right in his estate as against his creditors. But it is otherwise if the absence was voluntary on the part of the wife, amounting to a wrongful abandonment of the husband."

Thomp. on H. and E., Sec. 91, citing *Lacey* v. *Clements*, 36 Texas, 661, and *Earl* v. *Earl*, 9 Texas, 643.

It has also been held that a wife is not entitled to homestead in the lands of her husband, acquired in another State by him after deserting her and their children, she never having resided in the latter State. *Stanton* v. *Hitchcock* (Mich.), 31 N. W. R., 395.

*Secondly,* Taking the answer of defendant to be a correct history of the life and conduct of complainant since her marriage with Ambrose Prater, we have no hesitation in holding that she, by that life and conduct, abandoned and forfeited all right she may ever have had to homestead in his property. She voluntarily and permanently deserted

Prater *v.* Prater.

husband and home, eloped with another man and lived with him, out of this State, in continuous lewd intercourse for a long period of years, even up to the very time her deserted husband died.

While he lived there was no condonation of her offense—no reconciliation between them. None was sought by her, none offered by him.

For her conduct this record presents not the slightest excuse or justification.

It is true she alleges improper relations on his part with another woman prior to the separation between him and complainant, but there is no effort to prove the truth of the allegation, nor is it admitted in the answer, so as to dispense with the necessity of proof.

In the absence of evidence, in some form, impeaching his treatment of complainant, it is presumed that he acted toward her as the law required him to do, and that her confessed desertion of him and his home was willful and without provocation.

His marriage to the defendant a few months before his death, and long years after the complainant abandoned him, does not reflect upon his conduct toward her before she left him, for the answer asserts that the marriage between him and the defendant was in regular form, and by them believed to be lawful, on the assumption that complainant had obtained a divorce from him.

True, this record furnishes no proof of a divorce, and the complainant must, therefore, for the

purposes of this suit, be regarded, in a technical sense, as the wife of the deceased at the time of his death.

But that cannot change the result. All except the mere formal relation of marriage had long since ceased to exist between them. She looked not to him for the protection and support due from a husband to his wife; nor did she perform for him, or acknowledge as due to him, any of those duties and obligations which a wife owes to her husband.

Though complainant is technically the widow of the deceased, she does not bear to him, to his family, or his estate, that relation which alone would justify her claim to homestead.

The homestead exemption is intended solely for the benefit of the *family*, and none are authorized in law to participate in its advantages except those who come within the meaning of that term. Ordinarily the wife is entitled to share in the homestead, because she is ordinarily a member of the family; but if she voluntarily withdraw from the family circle without cause, and of her free choice live elsewhere, she then and thereby excludes herself from the enjoyment of the homestead with the family.

So the "widow," to whom the right of homestead inures at the death of the husband, must have been a member of his family in a legal sense when he died; otherwise she cannot successfully assert a claim to homestead in his estate after his

death. This does not imply that she must in fact and in all instances have been residing with her husband upon the homestead at the time of his death; it is sufficient that she was, at that time, *in law entitled to such residence with him, or with the family.*

But, if she has, willfully and without excuse, deserted the family and eloped and lived with an adulterer, or otherwise so demeaned herself that she may neither in morals nor in law require the husband to receive her back again, she is, in such case, not a member of his family while he lives, and does not become his "widow" in contemplation of the homestead laws when he dies.

By all rules of public policy and good morals, the complainant in this case had forever excluded herself from the society, family circle, and home of her husband in his life-time; and by the same rules she is excluded from the enjoyment of his homestead after his death.

Upon the whole case, it is true, as said in behalf of the complainant, that the right of homestead in this State is a constitutional right, and should be zealously guarded by the courts.

We have recognized this fact fully in the consideration of this case, and in the preparation of this opinion.

But it is equally true that before a person can justly assert a constitutional right he must bring himself within the operation of the constitutional provision. This the complainant, now before the

Court, has failed to do in two particulars. She has not shown herself to be a resident of this State, nor has she shown herself to be the *widow* of the deceased, in the sense contemplated by the Constitution. She has failed to establish for herself a *status* to which the constitutional provision, in any sense, applies.

Again, a constitutianal right, like a statutory or other right, may be abandoned and forfeited by the beneficiary.

It has been so held repeatedly in this State and in many of the other States of the Union, and that, too, with respect to the right of homestead itself.

The decree as to homestead is reversed and the bill dismissed.

Complainant will pay all costs.