Grier v. Canada.

## JOHN M. GRIER v. W. R. CANADA et al.

### (Jackson.  April Term, 1907.)

1. **WILLS. Devise of land to be divided among devisee's bodily heirs at his death vests in him a life estate only, when.**

    A devise of real estate to testator's son, and at his death to be equally divided among his bodily heirs as the property of the testator, vests in the son only a life estate.  (*Post, pp.* 22, 24.)

2. **SAME. Certified copy of probated will is prima facie evidence of its validity; what may be shown; issue of devisavit vel non is not triable, when.**

    The heir, seeking to establish his title to land in a suit to recover it, may proceed upon a certified copy of the probated will, which, when duly attested, is *prima facie* evidence of the validity of the will, but it is not conclusive; and while the fact that fraud was committed in drawing or obtaining the will or that it was not formally executed and attested, may be shown, yet it is not admissible in such a suit to try an issue of *devisavit vel non.*  (*Post, pp.* 28-31.)

    Code cited and construed:  Secs. 3929-3931 (S.); secs. 3037-3039 (M. & V.); secs. 2197-2199 (T. & S. and 1858).

    Acts cited and construed:  Acts 1784 (Oct. Ses.), ch. 10, sec. 6.

    Cases cited and approved:  Weatherhead v. Sewell, 9 Humph., 272; Brown v. Brown, 14 Lea, 253.

3. **SAME. Probate record of holographic will must show what, to be valid as to land; good as to personalty, when.**

    The probate record of a holographic will must show, among other things, that the handwriting of the testator was generally known by his acquaintances and that three credible witnesses proved that the writing and every part of it was in his hand, to be valid and effective as to the land devised. Probate record of proof by two witnesses that they were well ac-

Grier v. Canada.

quainted with the testator's handwriting, and that the signature to the will is in his handwriting, is fatally defective and insufficient to sustain a holographic will of realty, because the statutory requirements do not appear in the record, but it would be good for a will of personalty. (*Post, pp.* 31. 32.)

Code cited and construed: Sec. 3896 (S.); sec. 3004 (M. & V.); sec. 2163 (T. & S. and 1858).

4. **SAME. Re-probate supplying defects nineteen years after original probate is prima facie sufficient, when.**

Where the probate record of a holographic will made in 1886 was insufficient as to realty, but sufficient as to personalty, a re-probate thereof made in 1905, upon motion in an *ex parte* proceeding without petition or notice, as required for probate in solemn form, but with all the formalities required to probate a holographic will as to land, is sufficient to make out a *prima facie* case in favor of a beneficiary under the will, since it was an ancillary proceeding to supply formalities that were omitted in a former order rather than to destroy the original probate, and the burden of proving the invalidity of the will for fraud, accident, or mistake, devolved upon those asserting it. The right to re-probate was not barred by the lapse of time. (*Post, pp.* 32-34.)

5. **ESTOPPEL. By statements and admissions in sworn pleadings in other suits.**

A party will not be permitted to deny in one proceeding facts which he has admitted or averred in his solemn pleadings under oath in another proceeding. Hence, where defendants had asserted in sworn pleadings in other suits or proceedings that a certain decedent had left a last will and testament, which was duly probated, etc., they are estopped to deny the probate of the will. (*Post, pp.* 34-37.)

Cases cited and approved: Hamilton v. Zimmerman, 5 Sneed, 39; Stephenson v. Walker, 8 Bax., 289; Chilton v. Scruggs, 5 Lea, 318.

Grier v. Canada.

6. **SAME. By** deposition in judicial proceedings.

Where a party has testified to certain facts in a deposition taken in judicial proceedings, he will be estopped from denying such facts in another proceeding. (*Post, p.* 36.)

Cases cited and approved: Cooley v. Steele, 2 Head, 605; Stillman v. Stillman, 7 Bax., 175.

7. **INNOCENT PURCHASER. Defense must be made by answer or special plea.**

The defense of innocent purchaser must be made either by the answer or special plea. (*Post, p.* 37.)

Case cited and approved: Dunham v. Harvey, 111 Tenn., 620.

8. **SAME. Refusal to permit plea to be filed at hearing will not be reviewed on appeal.**

The action of the chancellor in declining to permit the plea of innocent purchaser to be filed after all the evidence had been taken and the case was about to be tried will not be reviewed on appeal. It was a matter in the sound discretion of the chancellor. (*Post, p.* 37.)

9. **HOMESTEAD. Abandoned by removal from the State by a wife cohabiting with another man.**

Since Acts 1879, ch. 171, the right of homestead is not dependent upon occupancy, and an assigned homestead is not abandoned by removal from the premises, except by permanent removal beyond the limits of the State. Our homestead and exemption laws are for citizens only, and not for nonresidents, and the homestead is abandoned or forfeited when the occupant becomes nonresident. Hence, where one claiming a right under assigned homestead deserted her husband and removed to another State, where she cohabited for several years with another man, the homestead was abandoned when she became a nonresident. (*Post, pp.* 37-42.)

Code cited and construed: Sec. 4227 (S.); sec. 3331 (M. & V.); sec. 2474 (T. & S. and 1858).

Acts cited and construed: Acts 1879, ch. 171.

Grier v. Canada.

Cases cited and approved: Prater v. Prater, 87 Tenn., 78; Carrigan v. Rowell, 96 Tenn., 185; Farris v. Sipes, 99 Tenn., 300; Briscoe v. Vaughn, 103 Tenn., 311; Coile v. Hudgins, 109 Tenn., 220; Freeman v. Freeman, 111 Tenn. 151.

**10. SAME.** When assigned, is transferable as life estate.

Homestead, when assigned, is transferable as a life estate. (*Post*, *p.* 40.)

Cases cited and approved: Cowan v. Carson, 101 Tenn., 523; Delk v. Yelton, 103 Tenn., 480; McCrae v. McCrae, 103 Tenn., 721.

**11. PRESUMPTION.** Of continuance of life, when.

Where a person is shown to be living at a certain time, the presumption of continued life arises, in the absence of proof, as where a husband is shown to be living when he procures a divorce from his wife, he will be presumed, in the absence of proof, to be living, when she subsequently marries her co-adulterer, and attempts to convey the homestead. (*Post, p.* 41.)

**12. HOMESTEAD.** Abandonment of, shown by records in other suits, when.

In an action involving title and right to possession of real estate, where defendant claimed under a conveyance of an alleged assigned homestead the record of a divorce suit against defendant's grantor, showing that she had become a nonresident and had abandoned the homestead before the conveyance is admissible, and so is the record of a suit by defendants against their said grantor alleging her nonresidence. (*Post*, *pp.* 41, 42.)

**13. EVIDENCE.** Part of record is admissible where balance is accounted for, when.

Part of a record is competent and admissible, where the certificate of the clerk accounts for the balance of the record. (*Post*, *p.* 42.)

Cases cited and approved: Russell v. Houston, 115 Tenn., 536.

Grier v. Canada.

FROM GIBSON.

Appeal from the Chancery Court of Gibson County.— JOHN S. COOPER, Chancellor.

DEASON, RANKIN & ELDER, for complainant.

HARWOOD & CLARK, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this bill is to establish complainant's title and right of possession to a tract of land situated in Gibson county and comprising about 130 acres.

Complainant, John M. Grier, claims title to the land under the will of his grandfather, A. M. Grier, who died testate in Gibson county, Tenn., about the 17th day of December, 1885, leaving surviving him as his only heir at law James P. Grier, who was the father of the present complainant. The bill alleges that said will was duly and regularly probated before the county court of Gibson county, Tenn., and duly recorded. A copy of the will was filed as an exhibit to the bill.

The third item of the will of A. M. Grier is in the following language:

"That I give and bequeath unto my son, James P. Grier, as after all my just debts being settled, all my personal property and real estate, and at his death I direct that my real estate be divided equally among his bodily heirs."

It is alleged in the bill that the James P. Grier referred to in the clause of the will just quoted was the father of complainant, John M. Grier; that the said James P. Grier is dead, and that he died in the month of February, 1889; that the complainant, John M. Grier, is the only child and bodily heir of the said James P. Grier; and that complainant was born on the 19th of March, 1882, in Gibson county, Tenn. It is then alleged that under proper construction of said will James P. Grier, the father of complainant, took a life estate in the tract of land in controversy, and that complainant, as the only bodily heir of the said James P. Grier, was vested under said will with the remainder in fee in said tract of land, and that, said life estate having terminated in February, 1899, by the death of his father, James P. Grier, the complainant became then entitled to the immediate possession of the same; but that the defendants, S. L. Canada and her husband, W. R. Canada, are now and have been since February, 1899, in the possession of said land, exercising dominion over the same, and appropriating the rents and profits thereof to their own use and benefit.

Complainant further states to the court that he was twenty-one years of age on the 19th day of March, 1903,

and the present bill was filed on the 20th of December, 1905, within three years after he attained his majority. The complainant shows to the court that defendants Canada and wife have claimed said tract under and through a deed executed to them by complainant's father, James P. Grier, on the 10th day of October, 1888; that said deed does not undertake to show what interest the said James P. Grier claimed in said land, but that the said W. R. Canada, at the date of said conveyance, well knew that the said James P. Grier only had a life estate in said property; that, while said conveyance recited the consideration of $750, the real consideration was much less, and merely a nominal sum; that James P. Grier (or James W. Grier, as the name erroneously appears in the deed) had only a life estate, and could convey no more, and did in fact convey only a life estate.

Complainant further charges that W. R. Canada became involved in debt on the 25th of October, 1889, and made a fictitious conveyance of said land to one J. T. Gordon; that the said J. T. Gordon held the same for some time for the benefit of the said W. R. Canada; that on October 22, 1891, the said J. T. Gordon executed a quitclaim deed to said tract of land to Mrs. S. L. Canada, wife of W. R. Canada; that S. L. Canada held said land until August 10, 1898, when she made some kind of conveyance of the same to her son, W. B. Somers; that the said W. B. Somers pretended to hold the said tract of land for some time, but in fact W. R. Canada and wife, S. L. Canada, were the real beneficiaries of

the rents and profits during said time; that finally, on the 30th of January, 1905, the said W. B. Somers reconveyed said land to the defendant S. L. Canada, wife of W. R. Canada, and the defendants are now holding said land under that conveyance. The defendants demurred to the bill, assigning for cause that under a proper construction of the will of A. M. Grier, deceased, the said James P. Grier took the absolute fee in said tract of land, and not merely a life estate, as claimed by complainant in the bill. The chancellor overruled said demurrer, and on appeal the decree of the chancellor was affirmed by this court at the April term, 1906. It was adjudged by this court that under a proper construction of said will the said James P. Grier only took a life estate, and thereupon the cause was remanded to the chancery court of Gibson county for answer and further proceedings.

On June 6, 1906, defendants Canada and wife filed their joint and separate answers, in which they admitted the death of A. M. Grier and that James P. Grier was his only child and heir at law. Among other defenses interposed, defendants deny that A. M. Grier disposed of or undertook to devise said tract of land by will, or that he ever executed a will to convey real estate, or that he ever attempted to do so, or that the alleged will could form any link in complainant's alleged chain of title. Further answering on this point, respondents state that shortly after the death of said A. M. Grier said alleged will was attempted to be probated in the county

court of Gibson county as a holographic will; but upon the proof the will was probated simply as a valid will of personal property, and the adjudication of the county court affirmatively shows that it was not and could not be probated as a holographic will, and, if a valid will at all for any purpose, these respondents deny that it was valid as a conveyance of real estate. The alleged probate of said will was made on March 1, 1886.

Since this averment of the answer is based upon the order of the county court probating said will March 1, 1886, it is well at this point to set out said probate order, as follows:

"A paper writing purporting to be the last will and testament of A. M. Grier, deceased, was this day produced in open court, and the handwriting of the said A. M. Grier proven by the oaths of W. J. R. Becton and H. J. Thomas, who, being duly sworn, depose and say that they are well acquainted with the handwriting of said A. M. Grier, and the signature thereto is in his handwriting.

"Whereupon said instrument was admitted to probate as the last will and testament of W. A. Grier, deceased, and ordered put to record."

It will be observed that the specific objections to this order of probate is that it does not affirmatively appear that the handwriting of the testator was proven by three witnesses, nor does it appear from the testimony of three witnesses that said paper writing was wholly in the handwriting of the testator; but the probate only re-

cites that two witnesses proved that they were well acquainted with the handwriting of the testator and that the signature to the instrument was in his handwriting. Further it appears that said instrument was admitted to probate as the last will and testament of W. A. Grier, deceased.

It is to be observed, however, that said order of probate opens the recital as follows: "A paper writing purporting to be the last will and testament of A. M. Grier, deceased," etc.

The answer further avers that at the December term, 1905, of the county court of Gibson county, and only a few days before the filing of complainant's bill, complainant, without notice to either of these defendants, went before said county court and undertook to reprobate said instrument as a holographic will. It is admitted that the last order or probate, made at the December term, 1905, of the county court, fully complies with all of the formalities required by law to probate a holographic will; but it is insisted on behalf of the defendants that the county court, having probated this will more than twenty years prior to this time, had no jurisdiction to set aside the former probate upon mere motion of the executor and re-probate said will. Further answering, defendants say that the last action of the county court is void, not only from want of jurisdiction, but because said will is not in the handwriting of A. M. Grier, deceased, unless it is the signature of the said instrument; and it is further charged that the re-

probate was a fraudulent scheme upon the part of the complainant and the executor to recover the real estate in question from these defendants. It is then averred that no part of the statutory requirements with reference to holographic wills was ever complied with; that the paper writing was not in the handwriting of the testator, nor was the will found among his valuable papers, nor was the handwriting known to be the handwriting of A. M. Grier. It is further charged that the latter action of the county court was procured by fraud and misrepresentations as to the real facts touching the execution of said paper, and was taken by the county court upon *ex parte* proceedings, and is invalid so far as defendants are concerned.

Among other defenses pleaded were the statutes of limitation of three, six, seven and twenty years, the defense of coverture, and a discharge in bankruptcy.

On the issues thus formulated proof was taken, and on the final hearing the chancellor decreed that complainant was entitled to recover possession of said tract of land from the defendants W. R. Canada and his wife, S. L. Canada, and ordered a writ of possession to issue. The chancellor further decreed that the defendants are not entitled to retain possession of the land known as the "Brewer homestead," and particularly described in the decree in *J. T. Carthel et al.* v. *J. N. Brewer et al.*, and in certain of the conveyances offered in evidence, but that complainant is entitled to recover possession of that portion of said land, and was so entitled

to recover the same upon the death of James P. Grier in February, 1889.

The chancellor then ordered a reference to the clerk and master to take proof and report as to the rents and profits of said land since 1899, and thereupon the present appeal was prayed by the defendants, which was accordingly allowed by the chancellor in the exercise of his discretion.

The first assignment is: The court erred in decreeing that the paper writing exhibited with the bill, and under which complainant claims, was in fact and in law the last will and testament of A. M. Grier, deceased.

The second assignment is that the court erred in the admission as evidence of the record of probate of said alleged will at the March term, 1886, of the county court of Gibson county. Said record on its face, and said will, showed that no title to said land was or could be communicated to the complainant by or through said will and said probate thereof.

The third assignment of error is that the court erred in the admission of said will and the attempted probate of the same at the December term, 1905, of said county court, as evidence in this cause.

These three assignments of error, presenting cognate questions, will be considered together. The general object of this bill is to establish title to land under a will as a muniment of title. The validity of the probate of that will, as well as the validity of its execution, are both attacked in the answers filed in this cause. It is im-

portant, therefore, in the investigation of this cause, to state the law applicable in such cases.

The act of 1784, embodied in Shannon's Code, provides as follows:

"Sec. 3929.   The probate of wills in the county courts shall be sufficient evidence of a devise of real estate.

"Sec. 3930.   Attested copies of such wills or the records thereof by the proper officer may be given in evidence in the same manner as the originals.

"Sec. 3931.   But when any fraud is suggested to have been committed in the drawing or obtaining any last will or any irregularity in the executing or attestation thereof, the party making such suggestion may insist upon the original will being produced to the court if the same is to be found."

This act and its construction was before this court in *Weatherhead* v. *Sewell,* 9 Humph., 272, and *Brown* v. *Brown,* 14 Lea, 253, 52 Am. Rep., 169.   Mr. Pritchard, in his work on Wills and Administrations (section 321 *et seq.*), has a clear and condensed statement of the result of our decisions establishing the practice in such cases:

"Sec. 321.   Before the statute on the subject, when a will was relied on as a muniment of title to the lands, the original had to be produced and proved; but the statute permits the use of a certified copy, which may be read upon the probate in the county court.   When this was done the parties stood in the same position that they would have stood in provided the original had been

produced and proved as is required by the common law; that is, the party claiming under a will has made out his case *prima facie,* and those claiming against the will are put upon the defense to show that it is no will, or that the party producing it takes no interest under it. An attested copy of the will, with the probate in the county court, is substituted in the place of the original will and proven in open court *per testes*; but such attested copy, with the probate, is not conclusive, as is the probate of a will in personalty. The statute was intended for the benefit of those contesting the right of the claimant under the will, in order to give them the benefit of any evidence of fraud or irregularity which may appear on the face of the will. The defendant may attack the will, and the rights of those claiming under it, as well and to the same extent as where the original is produced and proved in common-law form upon the trial. But, before the person resisting the claim under the will can require the production of the original, he must suggest that a fraud has been committed in drawing or obtaining it, or that there is some irregularity in the execution or attestation thereof."

It thus appears from the authorities that the heir, in seeking to establish his title to the land in controversy, may proceed upon a certified copy of the will, which, when duly attested, is *prima facie* evidence of the validity of the will; but it is not conclusive. It may be shown that a fraud was committed in drawing or obtaining it, or that it was not formally executed and at-

tested; but it is not admissible in such a proceeding to try an issue of *devisavit vel non.*

The question first arising is in respect of the validity of the probate of this will at the March term, 1886. As already seen, that probate record is as follows:

"A paper writing purporting to be the last will and testament of A. M. Grier, deceased, was this day produced in open court, and the handwriting of the said A. M. Grier proven by the oaths of W. J. R. Becton and H. J. Thomas, who, being duly sworn, depose and say that they were well acquainted with the handwriting of the said A. M. Grier, and the signature thereto is in his handwriting. Whereupon said instrument is admitted to probate as the last will and testament of A. M. Grier, deceased, and ordered put to record. And thereupon J. C. A. Grier, the executor named in said will, came into court and entered into bond for the sum of $200, and W. J. R. Becton and J. Y. Mitchell as his sureties, which bond was duly acknowledged in open court, received, and approved by the court, and ordered to be recorded; and thereupon the said J. C. A. Grier took the oath prescribed by law. And accordingly ordered letters testamentary issue."

We are of the opinion that this probate record was fatally defective. While good as a will of personalty, such a probate was wholly insufficient to prove a will of realty. It will be observed that the effort, as disclosed by the probate record, was to prove a holographic will. The probate record fails to disclose that the

handwriting of the testator was generally known by his acquaintances and that three credible witnesses proved that the writing and every part of it was in his hand. None of the statutory requirements in order to make a valid probate of a holographic will appear in this probate record. Shannon's Code, section 3896.

It is conceded that the re-probate made on the 19th day of December, 1905, supplied all the omissions in the original probate and conformed with all the formalities prescribed by statute for a probate of a holographic will. It is unnecessary to set out at length this re-probate.

It is insisted, however, on behalf of appellants, that the county court, having exhausted its jurisdiction to probate this will at the March term, 1886, had no power to entertain the second probate, except by regular proceedings to probate in solemn form. It is further insisted on behalf of appellants that the probate of the original will at the March term, 1886, of the said court, was an adjudication that the said will was a good and valid will of personalty and an insufficient and invalid will of real estate. Finally, it is said that in no event would the county court have authority or jurisdiction to probate this will again upon mere motion in an *ex parte* proceeding, without petition and without notice.

We are of opinion that the re-probate of the will at the December term, 1905, although nineteen years after the original probate, was authorized by law. In considering this subject Mr. Pritchard says (section 322):

"The power of the county court to revoke a probate

once granted, although nowhere expressly recognized in the statutes of this State, is a just and necessary power to be implied from the statute conferring the general power to take the probate of wills and grant and revoke letters testamentary and of administration. This power exists in cases where the grounds of objection go to the validity of the probate and involve no contested point of fact necessary to be determined by a jury on an issue of *devisavit vel non*. *Wall* v. *Wall*, 64 Am. Dec., 147, s. c. 30 Miss., 91. But the power should be cautiously exercised, and it should require a much stronger case to justify the revocation of a probate already granted than merely to show such a state of facts as would justify the rejection of the will in the first instance, since the application for revocation suggests an impeachment of the original proceedings."

Mr. Pritchard in the next section (323) enumerates instances in which the probate of wills has been revoked and the same will re-probated. The author, in section 324, then announces this rule:

"The time within which application for revocation of a probate must be made is probably limited to twenty years in the case of a will of personal estate; but there is probably no limitation in the case of a will of land" —citing *Townsend* v. *Townsend*, 4 Cold., 70, 94 Am. Dec., 185; *Gibson* v. *Lane*, 9 Yerg., 475.

The same author in section 316 says:

"There was no limitation at common law, and very

ancient wills have been admitted to probate; it being understood that not less than thirty years would bar a probate. . . .

"But, when there is a great delay in presenting a will for probate, its probation will not be allowed to affect the operation of the statute of limitations, so as to disturb vested rights protected by the running of the statute." See, also, section 351, *Id.*

It will be observed that the object of the re-probate in the present instance was not to annul the original probate, but was to supply formalities that were omitted in the former order. It was rather an ancillary proceeding than one to destroy the original probate. The re-probate of this will at the December term, 1905, of the county court, was in our opinion clearly authorized, and is sufficient to make out a *prima facie* case in favor of the right of John M. Grier to recover the land in controversy. In the present state of the record, the burden of proof devolved on the defendant and appellant to show that this will was not valid for fraud, accident, or mistake.

We think, however, upon the facts disclosed in this record, appellants are estopped from impeaching the sufficiency of the probate proceedings. The fact is established that appellants have been claiming the land in controversy, under the will thus sought to be impeached, for nearly twenty years. It appears that on October 25, 1889, the appellant W. R. Canada filed a

bill concerning the land in controversy in which he made the following allegation:

"The said Abner M. Grier, the former owner of said land, died in February, 1886, leaving his last will and testament, which was duly probated in the county court of Gibson county, Tenn. (the place of his death), shortly thereafter, and a certified copy of the same will be filed on or before the hearing as evidence. By this will the land aforesaid was devised to his son and only heir at law, complainant J. P. Grier, and on the —— day of ——, 188—, the said complainant J. P. Grier sold and conveyed the said land to complainant W. R. Canada," etc.

It thus appears that J. P. Grier was the complainant in this bill, and that he claimed to have acquired the title to this land under the will of his father. W. R. Canada joined in these allegations, claiming under said will, and through J. P. Grier as devisee under the will. It appears that this bill was still pending when the land in controversy was re-conveyed to the defendant Mrs. S. L. Canada by T. J. Gordon, thus constituting a *lis pendens*. But the following additional fact appears in the record, to-wit: On March 10, 1894, W. R. Canada and his wife, Mrs. S. L. Canada, filed another bill in the chancery court of Gibson county touching the same land in controversy. In this bill Mrs. S. L. Canada joins and quotes with approval the allegations already quoted in the former bill concerning the will and its probate. The former bill was substantially quoted, and

it is then recited that Mrs. Canada, together with her husband, "adopt the said charges of the said bill hereinbefore quoted, and do adopt said bill."

Thus we find solemn admissions by both of these appellants in a judicial proceeding touching the title and possession of this land. In one bill W. R. Canada claimed under the will of A. M. Grier, and in the second bill his wife joined him in reiterating the same claim. It was alleged by both that A. M. Grier died leaving a last will and testament, and that the same was duly probated in the county court of Gibson county, and that the land involved in this suit was devised to his son, J. P. Grier. These allegations are sworn to by both of these appellants. These allegations were made under oath in 1888, and again in 1894.

A party will not be permitted to deny in one proceeding facts which he has admitted or averred in his solemn pleadings under oath in another proceeding. *Chilton* v. *Scruggs,* 5 Lea, 318.

Where certain statements are made by a party in a sworn bill, he is estopped from denying those statements in any subsequent proceeding, or from asserting the contrary to be true. *Stephenson* v. *Walker,* 8 Baxt., 289. *Hamilton* v. *Zimmerman,* 5 Sneed, 39.

The same rule of estoppel applies where a party has testified to certain facts in a deposition taken in the course of judicial proceedings. *Stillman* v. *Stillman,* 7 Baxt., 175; *Cooley* v. *Steele,* 2 Head, 605.

We are therefore of opinion that appellants, on ac-

count of the recitals and solemn admissions under oath in their former pleadings, are now estopped to deny the valid execution of the will of A. M. Grier or the regularity of the probate proceedings.

Counsel for appellants, in the course of his argument, invokes the doctrine of innocent purchaser on behalf of his clients; but this defense is not made either by the answer or special plea. *Dunham* v. *Harvey*, 111 Tenn., 620, 69 S. W., 772. Nor was there any error in the action of the chancellor in declining to permit the plea of innocent purchaser to be filed after all the proof had been taken and the case was about to be tried. This was a matter that addressed itself to the sound discretion of the chancellor, and his action in disallowing the plea will not be reviewed.

The next assignment is that the chancellor erred in decreeing that complainant was the owner of the homestead in the sixty-five acres of land assigned to Brewer and wife. It is said the chancellor should have decreed that Mrs. Canada was the owner of said homestead. In this connection will be considered the following assignments of error:

(a) The court erred in excluding deed from J. L. Clark and wife to Mrs. S. L. Canada, conveying said homestead.

(b) The court erred in the admission of the record in the case of *W. R. Canada* v. *Clark et al.* from the chancery court of Gibson county.

(c) The court erred in the admission of the record in

the case of *Gravitt* v. *Gravitt* from the chancery court at Trenton, Tenn.

The homestead in question, comprising about sixty-five acres, was assigned to Brewer and wife in the year 1875, in the case of *Carthel* v. *Brewer,* pending in the chancery court of Gibson county. It was a part of the 160 acres of land in controversy, and the balance of the tract, including the remainder interest in the homestead, was sold to S. A. Grier. In November, 1875, S. A. Grier, for the consideration of $1,000, executed a quitclaim deed to A. M. Grier covering his interest in the 130-acre tract of land. It thus appears that A. M. Grier became the owner of the 130-acre tract of land subject to the homestead interest of Brewer and wife, and he still owned said property at the date of his death.

It further appears that, after the assignment of the homestead to Brewer and wife, Mrs. Brewer died, and shortly thereafter Mr. Brewer entered into another marriage. In 1883 Mr. Brewer died, and his widow, in the latter part of 1885, entered into a marriage with one Gravitt. In 1886 Gravitt procured a divorce, and subsequently, in the year 1886 or 1887, Mrs. Gravitt, formerly Mrs. Brewer, entered into a marriage with one Clark. In 1894 Clark and his wife, being in possession of the homestead which had been originally assigned to Brewer and wife, sold and transferred the same to Mrs. S. L. Canada for the consideration of $225. It appears that Mrs. Canada held and occupied this homestead un-

der the conveyance from Clark and wife for nearly twelve years prior to the filing of the bill in this cause.

As already seen, the chancellor decreed that complainant was entitled to recover possession of this homestead, and that he was so entitled to the same upon the death of J. P. Grier, in February, 1899.

When the defendants offered in evidence the deed of J. L. Clark and wife to S. L. Canada, objection was made on behalf of complainant to said deed, for the reason it appeared from the proof that the said M. J. Clark was divorced from her husband William Gravitt, on account of adultery with J. L. Clark, and it further appeared that at the time this paper was executed she was still living in adultery with the said Clark, and that it thus appeared from the proof that said deed was made in violation of the nonalienation statute of Tennessee, and that the alleged deed was absolutely void by the express provisions of the statute. This objection was sustained by the court, and said deed was excluded, and not permitted to be read in evidence, to which action of the court the defendants excepted at the time.

The section of the Code invoked is found at section 4227, Shannon's Code, as follows:

"After a divorce for adultery on the part of the wife, if she afterwards cohabit at bed and board with the adulterer, she shall be incapable of alienating directly or indirectly any of her lands; but all deeds, wills, appointments, and conveyances thereof, by her made, shall be void and of no effect; and after her death the same

shall descend, and be subject to distribution, as if she had died seized and possessed thereof intestate."

In *Prater* v. *Prater,* 87 Tenn., 78, 9 S. W., 361, 10 Am. St. Rep., 623, it was held that a woman who without cause had deserted her husband, and eloped with another man, and taken up permanent residence with him in another State, and there continued to live in adultery with him until after her husband's death, forfeits her right as widow in the lands owned by her husband at his death. See, also, *Freeman* v. *Freeman,* 111 Tenn., 151, 76 S. W., 825.

It will be observed in the present case that these provisions of the law are invoked to work a forfeiture of the homestead right of Mrs. Clark upon the ground of her alleged adultery with J. L. Clark while she was wife of Gravitt. Counsel for complainant also relied on the fact that an abandonment of this homestead by Mrs. Gravitt, or Mrs. Clark, is disclosed by this record. It is well settled that our homestead and exemption laws are for citizens only, and not for nonresidents, and the homestead is abandoned or forfeited when the occupant becomes nonresident. *Carrigan* v. *Rowell,* 96 Tenn., 185, 34 S. W., 4; *Farris* v. *Sipes,* 99 Tenn., 300, 41 S. W., 443; *Coile* v. *Hudgins,* 109 Tenn., 220, 70 S. W., 56.

It is also well settled that homestead, when assigned, is transferable as a life estate. *Cowan* v. *Carson,* 101 Tenn., 523, 50 S. W., 742; *Delk* v. *Yelton,* 103 Tenn., 480, 53 S. W., 729; *McCrae* v. *McCrae,* 103 Tenn., 721, 54 S. W., 979.

Since the act of 1879 (Laws 1879, p. 213, c. 171) the right of homestead is not dependent upon occupancy, and hence assigned homestead is not abandoned by removal from the premises, except by permanent removal beyond the limits of the State. *Briscoe* v. *Vaughn*, 103 Tenn., 311, 52 S. W., 1068.

Mrs. S. L. Canada testified that Mrs. M. J. Gravitt lived with William Gravitt but a few days, when she eloped with Clark and removed to the State of Missouri, where she lived with Clark for several years. It appears from the record that William Gravitt filed a bill for divorce against his wife, Mrs. M. J. Gravitt, and there was publication for her as a nonresident. It was also adjudged in that case that Mrs. Gravitt had committed adultery with J. L. Clark while the wife of Wm. Gravitt.

We are of opinion that the homestead was abandoned and forfeited by Mrs. Clark in 1886, when she became a nonresident of Tennessee and eloped with J. L. Clark to Missouri, where she resided for several years.

It does not affirmatively appear from the record that William Gravitt was living at the date of the marriage of his divorced wife with J. L. Clark, nor does it appear that he was living at the date of the deed by J. L. Clark and wife, conveying this homestead to Mrs. S. L. Canada. It does appear that William Gravitt was living when the divorce was granted, and in the absence of proof the presumption of continued life would arise. The record of the divorce proceeding by William Gravitt against M. L.

Gravitt, his wife, was properly admitted in evidence, and the record shows that. Mrs. Gravitt had become a nonresident of the State of Tennessee. It is true the whole of that record was not produced; but a certificate of the clerk and master accounts for the absence of the balance of the record, and renders that part of it adduced competent. *Russell* v. *Houston,* 115 Tenn., 536, 91 S. W., 192.

Mrs. S. L. Canada and her husband, in a bill filed by them in 1894 against Clark and wife for the purpose of avoiding the homestead, alleges that Mrs. Clark left this tract of land and moved to Missouri "with no intention of ever returning to it or using it as her home." Again they allege "she voluntarily and permanently deserted her husband and home, eloped with another man, and lived with him out of the State for a long period of years." It is further alleged in that bill that the return of Mrs. Clark to Tennessee and to this tract of land "was an afterthought."

No evidence is introduced on behalf of appellants to explain or overthrow the evidence on the part of the complainants tending to show that Mrs. M. J. Gravitt was a nonresident of the State of Tennessee.

We think it unnecessary to pass upon the question of the forfeiture of this homestead on account of the adultery of Mrs. Gravitt with J. L. Clark, but base our decision of the forfeiture of homestead exclusively upon the proof of the nonresidence of Mrs. Gravitt.

Affirmed.