KEELIN V. GRAVES *et al.**

(*Nashville*.  December Term, 1913.)

1. **EXEMPTIONS.  Persons entitled to benefit.**

The exemption laws, both as to personalty and realty, are exclusively for the benefit of citizens of the State having a domicile herein.  (*Post, pp.* 109, 110.)

Cases cited and approved:  Hawkins v. Pearce, 30 Tenn., 44; Lisenbee v. Holt, 33 Tenn., 50; Vaugh v. Ballentine, 1 Tenn. Cas., 596; Hicks v. Pepper, 60 Tenn., 42, 46; Emmett v. Emmett, 82 Tenn., 369, 370, 371; Doran v. O'Neal (Ch. App.), 37 S. W. 563, 565; Carrigan v. Rowell, 96 Tenn., 185; Faris v. Sipes, 99 Tenn., 298; Coil v. Hudgins, 109 Tenn., 217; Hascall v. Hafford, 107 Tenn., 355; Beeler v. Nance, 126 Tenn., 589; Grier v. Canada, 119 Tenn., 17; Prater v. Prater, 87 Tenn., 78; Graham v. Stull, 92 Tenn., 673; Whitly v. Steakly, 62 Tenn., 393.

2. **ATTACHMENT.  Grounds.  Nonresidence.**

One may be a temporary nonresident of the state, so as to authorize an attachment, though his domicile is still in the State. (*Post, pp.* 110, 111.)

Cases cited and approved:  Smith v. Story, 20 Tenn., 420; Foster v. Hall & Eaton, 23 Tenn., 345; Stratton v. Brigham, supra; Klepper v. Powell, 53 Tenn., 503; People's Bank v. Williams (Ch. App.), 36 S. W., 983, 985, 986.

3. **EXEMPTIONS.  Nonresidence.**

The exempt property of one whose domicile is in Tennessee, though he may be personally absent from the State for a considerable time on business, is free from attachment or execution for debt, even though he be absent long enough to authorize an attachment in lieu of personal service as to other kinds of property.  (*Post, pp.* 111, 112.)

---

*As to when nonresidence of person intending to leave permanently begins for purpose of attachment or exemption, see note in 1 L. R. A. (N. S.), 778.

4. DOMICILE. "Change of domicile,"

Every one has a legal domicile, which is not changed until a new one is acquired, and to work a "change of domicile" he must have removed to another State to make his home there; a mere removal for business purposes, though long continued, not changing his domicile, if he intends to return to this State upon the completion of his business, though a mere floating purpose to return to the state at some indefinite time will not destroy the presumption that his change of residence changed his domicile (citing Words and Phrases, vol. 3, title "Domicile"; see, also, Words and Phrases, vol. 2, pp. 1053, 1054). (*Post, pp.* 111, 112.)

Cases cited and approved: Foster v. Hall & Eaton, supra; Allen v. Thomason, 30 Tenn., 536; Layne Ex. v. Pardee and Wife, 32 Tenn., 232, 235; Pearce v. State, 33 Tenn., 66; White v. White, 40 Tenn., 402; Williams v. Saunders, 45 Tenn., 60, 79, 80; Kellar v. Baird, 52 Tenn., 39; Sparks v. Sparks, 114 Tenn., 666.

5. ATTACHMENT. Grounds. Nonresidence.

In an action to replevy goods, attached by defendant on the ground that plaintiff was a nonresident, the court instructed that the plaintiff went to North Carolina to engage in business, with no definite idea as to when he would return, to make that state his residence, or if, after he got there, he determined to make it his residence, and actually resided there when the attachment was levied, he would be a nonresident, though he might not have carried his family with him, but if he went on a visit, with the intention of returning when his visit was was out, he would not be a nonresident, and that if plaintiff left Tennessee with the intention of obtaining employment, and did so without any definite idea of returning to that state, and found such employment, he was thereafter a nonresident. *Held* that, while the instruction did not refer to domicile and involved only the idea of nonresidence, it was substantially correct on the question of change of domicile. (*Post, pp.* 113, 114.)

Keelin v. Graves.

**6. REPLEVIN.   Judgment.**

Under Shannon's Code, sec. 5144, requiring the judgment in re-
plevin to provide for the return of the goods to the defendant,
or, on failure to do so, that defendant recover their value, with
interest and damages for their detention, and Acts 1905, ch. 31,
prescribing substantially the same form of judgment in actions
before a justice, in an ordinary action of replevin originally
brought before a justice, it was error to render a money judg-
ment for defendant on the bond, in absence of evidence as to
the value of the property.   (*Post, pp.* 114, 115.)

Acts cited and construed:   Acts 1905, ch. 31.

Code cited and construed:   Sec. 5144 (S.).

FROM  DAVIDSON.

Appeal from the Circuit Court of Davidson Coun-
ty to the Court of Civil Appeals and by *certiorari* from
the Court of Civil Appeals to the Supreme Court.
—M. H. MEEKS, Judge.

C. H. RUTHERFORD, for plaintiff.

A. F. WHITMAN, for defendant.

Mr. Justice Neal delivered the opinion of the Court.

The plaintiff in error, just prior to the time this controversy began, was a citizen and resident of this State, but, on obtaining employment in North Carolina, went there in the early part of February, 1912, and had been gone less than a month when his household furniture was attached, by defendant Graves, for a debt due to him, on the ground that plaintiff in error was a nonresident. He replevied the property before a justice of the peace, and, after trial before that officer and judgment in his favor, the case was appealed to the circuit court of Davidson county, where judgment was rendered in favor of the defendant Graves, from which an appeal was prosecuted to the court of civil appeals, and, on reversal of the judgment in that court, the case was brought here by the writ of *certiorari*.

The property involved was exempt from debt under the laws of this State, unless this right had been abandoned by reason of the removal of Keelin to North Carolina. In behalf of defendant in error it is insisted that this removal was of such a character as to effect such abandonment, and on behalf of the plaintiff in error it is urged that the facts show it was only a temporary removal. The case comes before us on the charge of the trial judge; but, in order that we may understand the application of the instructions complained of, it is necessary that the facts should be set out. They are practically undisputed with one exception.

Keelin v. Graves.

It is shown by the officer who made the levy that at the time this levy was made there was a man present from Bond's warehouse for the purpose of packing the goods; that some of them had already been packed and marked for shipment to Raleigh, N. C., and some had been taken out of the house.

The plaintiff in error testified that he went to Raleigh, N. C., in February, 1912, on invitation of Edwards & Broughton Printing Company of that city, with a view to obtaining employment; that he was offered and accepted employment by the week, which still continues on the same terms; that he has no contract with his employers, except by the week; that he has rented a house by the month and moved his family into it; that at the time the attachment was levied he was in Raleigh, but his family was in Nashville, Tenn.; that when he went to Raleigh he had no definite plans as to the time of his return, but expected to return to Tennessee as soon as his business matters would justify—that is, as soon as he could secure employment that would justify his return; that his present employment is satisfactory, but the town is not; that he will not stay in his present place of employment at the salary now being paid, but he has not intimated to his employers his purpose to return to Tennessee; that he has not been back to Tennessee since he left; that, but for this lawsuit, he would not have removed his personal property to Raleigh; that it was his intention when he left Nashville to store his household goods in Nashville; that he has no contract, nor has he

any prospect of making any contract, with any other person than his present employers; that he claims Nashville as his home, and expects to remain in Raleigh until he can secure employment in Tennessee; that he has not permanently taken up his residence in North Carolina; that he expects to return to Tennessee. Other witnesses testify that the household goods in controversy were, at the time the levy was made, in the house occupied by his wife and family in Nashville, and in due order.

The trial judge, among other things not excepted to, charged the jury as follows:

"The question which is submitted to the jury for decision is: Was the plaintiff in this case, J. N. Keelin, at the time of the levy of the attachment, a nonresident of the State of Tennessee? If he was, your verdict should be for the defendant; if he was not, your verdict should be for the plaintiff.

"If the jury should believe from the evidence that the plaintiff, Keelin, went to North Carolina to engage in business there, with no definite idea as to when he would return, to make that State his residence, or if, after he got there, he determined to make it his residence, and actually resided there when the attachment was levied, he would be a nonresident, although he might not have carried his family with him; but if he went on a visit, with the intention of returning when his visit was out, or had not changed his residence, he would not be a nonresident.

"Exempt property is protected as long as it is in the State, and the head of the family is in the State, and a resident thereof, but is not protected if he is a nonresident of the State.

"The jury should look at all the evidence bearing upon the intention and conduct of the plaintiff as to his purpose and intention, to the situation of the goods and the statements and conduct of parties in charge of them at the time the levy was made, to the letters introduced, to the length of time the plaintiff was in North Carolina, and to all the evidence sub-mitted to them in deciding the question."

After the delivery of the foregoing charge the court gave to the jury the following special instruction at the request of the defendant below, which is also objected to by the plaintiff in error, viz.:

"If you should find that plaintiff had left the State of Tennessee with the intention of obtaining employment, and he did so obtain employment, without any definite idea of returning to this State, and that he found such employment in accordance with his intention and expectation at the time he left this State and went to North Carolina, then I charge you he was a nonresident at the time of suing out the writ of replevin."

Our exemption laws, both as to personalty and realty, are exclusively for the benefit of our citizens. *Hawkins* v. *Pearce,* 11 Humph., 44; *Lisenbee* v. *Holt,* 1 Sneed, 50. Citizens in the sense of these laws are only such persons as are domiciled in this State.

*Vaughn* v. *Ballentine,* 1 Tenn. Cas., 596; *Hicks* v. *Pepper,* 1 Baxt., 42, 46; *Emmett* v. *Emmett,* 14 Lea, 369-370-371; *Doran* v. *O'Neal* (Ch. App.), 37 S. W., 563, 565; *Carrigan* v. *Rowell,* 96 Tenn., 185, 34 S. W., 4; *Farris* v. *Sipes,* 99 Tenn., 298, 301, 41 S. W., 443; *Coile* v. *Hudgins,* 109 Tenn., 217, 70 S. W., 56; *Hascall* v. *Hafford,* 107 Tenn., 355, 65 S. W., 423, 89 Am. St. Rep., 952; *Beeler* v. *Nance,* 126 Tenn., 589, 150 S. W., 797. All the foregoing cases place the right squarely upon the existence and continuance of a domicile in the State. In *Grier* v. *Canada,* 119 Tenn., 17, at page 41, 107 S. W., 970, it is said generally that the homestead is abandoned by nonresidence; but this was said only in passing, and was not intended to overrule prior cases fixing domicile as the test, and, if so, it would itself be overruled by subsequent cases on the point. In *Prater* v. *Prater,* 87 Tenn., 78, 9 S. W., 361, 10 Am. St. Rep., 623, the term "nonresidence" is used; but it is apparent from the opinion that the word was used as the equivalent of domicile. In *Graham* v. *Stull,* 92 Tenn., 673, 22 S. W., 738, 21 L. R. A., 241, a case on the subject of the widow's year's support, the exemption was disallowed because the claimant was the widow of a nonresident; but no distinction was drawn between nonresidence and domicile in a foreign State, and this was not in the mind of the court. However, the court does refer to Arkansas as the domicile of the claimant. In *Whitly* v. *Steakly,* 3 Baxt., 393, a case wherein there was a levy on personalty claimed to be exempt, Whitly was held not en-

titled to the exempt property, because it appeared
he had removed to Texas "without any intention of
returning to Tennessee," which was equivalent, of
course, to saying he had acquired a domicile in Texas.

In this State nonresidence is one of the grounds of
attachment; but within the sense of our attach-
ment laws one may be a nonresident for the time be-
ing, so as to justify an attachment, although his
domicile may be in this State.   Said Chancellor Coop-
er in *Cain* v. *Jennings,* 3 Tenn., Ch., 131, 136, 137:
"The distinction between residence and citizenship
is well established in the construction of the foreign
attachment laws of the different states.   A person
may be a citizen of a State, and at the same time a
nonresident of the State, within the attachment laws.
This was held in New York, in a case where a citizen
had been absent three years, attending to a lawsuit at
New Orleans.   *Haggart* v. *Morgan,* 5 N. Y., 422 [55
Am. Dec., 350].   The doctrine of this case has been
substantially followed in New Jersey, Maryland,
Mississippi, and Wisconsin.   *Weber* v. *Weitling,* 18
N. J. Eq., 441; *Risewick* v. *Davis,* 19 Md., 82; *Alston*
v. *Newcomer,* 42 Miss., 186; *Wolf* v. *McGavock,* 23
Wis., 516.   The same principle, though not perhaps to
the same extent, has been recognized by our supreme
court in *Foster* v. *Hall,* 4 Humph., 346; *Stratton* v.
*Brigham,* B *Sneed,* 420, and *Kellar* v. *Baird,* 5 Heisk.,
46."   Still it is difficult to draw the line of distinction,
as will be seen from the following cases in this State:
*Smith* v. *Story,* 1 Humph., 420; *Foster* v. *Hall &*

*Eaton,* 4 Humph., 345; *Stratton* v. *Brigham,* supra; *Klepper* v. *Powell,* 6 Heisk., 503; *People's Bank* v. *Williams* (Ch. App.), 36 S. W., 983, 985, 986.

But, at all events, one who is domiciled in Tennessee, although he may be temporarily absent from the State for a considerable length of time on business, is entitled to hold his exempt property free from attachment or execution for debt, even though such absence be so prolonged as to justify an attachment, in lieu of personal service as to other kinds of property. What are the characteristics of domicile in its several aspects it is difficult to state. There are many definitions which seem simple enough in form, but they are not easy to apply to the varying facts of cases as they arise. We have in this State several cases presenting the question from various points of view, viz.: *Foster* v. *Hall & Eaton,* supra; *Allen* v. *Thomason,* 11 Humph., 536, 54 Am. Dec., 55; *Layne Ex.* v. *Pardee and Wife,* 2 Swan, 232, 235; *Pearce* v. *State,* 1 Sneed, 66, 60 Am. Dec., 135; *White* v. *White,* 3 Head, 402; *Williams* v. *Saunders,* 5 Cold., 60, 79, 80; *Kellar* v. *Baird,* 5 Heisk., 39; *Sparks* v. *Sparks,* 114 Tenn., 666, 88 S. W., 173. The numerous definitions appearing under the heading of "Domicile" in Words and Phrases, vol. 3, fully illustrate the difficulty of making a clear statement of the principles involved. We believe, however, that the rule is settled that every one must have a legal domicile somewhere, and that this legal domicile is not changed in law until a new one is acquired. We think the substance of our cases

is that, in order to destroy the *status* of a party as the possessor of a domicile once acquired in this State, it must appear that he has removed into another State for the purpose of making it his home, and that his removal for purposes of business, though long continued, will not have the effect of changing his domicile, if he has the purpose of returning to this State upon the completion of the business, but that a mere floating purpose to return to this State at some time will not be sufficient to destroy the presumption that his change of residence imported also a change of domicile.

Now, although the charge of the trial judge is based simply upon the idea of nonresidence without mentioning the subject of domicile, yet it contains in substance the thought that if the plaintiff in error went to North Carolina for the purpose of making it his home, without any definite intention of returning to Tennessee, his property would be subject to attachment as the property of a nonresident; that it to say, that he could not hold his *status* under such circumstances as the possessor of a domicile in Tennessee. So, in the special intsruction given, the same thought appears— that if he left Tennessee to obtain employment without any definite idea of returning, and did so obtain employment in the State to which he went, he would be a nonresident, and his property subject to attchment, even though of a kind exempt to those having a domicile or home in this State. While these instruc-

129 Tenn.—8

tions were not technically accurate, yet they were substantially so, and we therefore cannot sustain the error assigned upon the charge.

It is next assigned that the trial judge committed error in the form of the judgment. The verdict of the jury was in favor of the defendant below for the sum of $331.93. On this the trial judge rendered judgment as follows:

"It is therefore considered that the defendant C. A. Graves recover of J. N. Keelin the sum of $331.93, also the costs of this cause, for which amount, less that paid upon the bond in this cause, let *fi. fa.* issue; and it appearing to the court that J. N. Keelin, as principal, and T. L. Leatherwood, as surety, executed a bond in this cause to defendant J. M. Allen, deputy sheriff, February 28, 1912, in the sum of $300, for the recovery and possession of certain personal property then in the possession of J. M. Allen, deputy sheriff, under and by virtue of the writ of attachment then in his hands, issued by R. R. Caldwell, justice of the peace, in the case of *C. A. Graves* v. *J. N. Keelin,* February 27, 1912, and it further appearing that the conditions of said bond were to abide by and perform the orders of the court, and C. A. Graves having been substituted in the place and stead of the said J. M. Allen, deputy sheriff, and the court being of the opinion that the writ or replevin in this cause was wrongfully sued out by said Keelin, and the property wrongfully taken out of the possession of said officer, it is therefore ordered and adjudged by the court that

C. A. Graves recover of the said J. N. Keelin and T. L. Leatherwood the sum of $300, the same being the penalty of said bond, the same to be applied upon the above recovery of $331.93.   It is ordered that said amount be paid into court within thirty days from this date, and, in case of failure so to do, execution will issue therefor.''

The verdict and judgment were both fatally defective.   The bond was not of the character described in the judgment, viz., a ''replevy bond'' to obtain possession of property under attachment.   There was a distinct and independent action of replevin instituted before a justice of the peace, and an ordinary replevin bond was executed by Keelin, with Leatherwood as surety.   The only judgment that could have been rendered on this bond was that the goods should be returned to the defendant, or on failure that the defendant recover their value, with interest thereon and damages for the detention.   Shan. Code, sec. 5144. See, also, Acts 1905, ch., 31, prescribing substantially the same form of judgment before a justice of the peace.   But no evidence was offered as to the value of the property.

The judgment must therefore be reversed, and the cause remanded for new trial.