## REO MOTOR CAR CO. OF TEXAS v. BARNES. (No. 3550.)

Court of Civil Appeals of Texas. Texarkana. June 13, 1928.

Rehearing Denied June 28, 1928.

See, also, 289 S. W. 422.

O. F. Wencker, of Dallas, and Ramey & Davidson, of Sulphur Springs, for appellant.
Dial & Brim, of Sulphur Springs, for appellee.

HODGES, J. The appellant is a private corporation, with its principal office and place of business in Dallas county, Texas. In June, 1924, it filed this suit against Barnes, the appellee, to recover a seven-passenger Reo automobile described as model T-6. It is alleged that the car was loaned to Barnes, and he refused to return it upon demand. A writ of sequestration was applied for at the time the suit was filed, and the car taken from the possession of Barnes, and was not replevied by him. Barnes answered by a general denial and general and special exceptions. He further denied the loan, but alleged that he had purchased the car from appellant's agent, Roy Shumate. He also reconvened for damages which he claimed resulted from being deprived of the possession and use of the car, by its unlawful seizure under the writ of sequestration.

Supplemental pleadings were filed by both parties, sufficient to present all the issues to be discussed. In response to special interrogatories the jury found that appellant had not loaned the car to Barnes, but had sold it to him. The jury also awarded Barnes damages in the sum of $250 on his cross-action.

. The following is, in substance, the testimony of Roy Shumate, appellant's agent, who had the dealings with Barnes:

Witness lived in Greenville, Tex., and was

sales agent for appellant in June, 1924. His territory consisted at that time of northeast Texas. About June 5, 1924, he let Barnes have the car involved in this suit. Both parties were on the street in Dallas, near the Reo Motor Company's office. Witness was going back to Greenville, intending to take two cars—one a five-passenger, and the other a seven-passenger. He intended to drive the five-passenger car himself, and employ some one else to drive the other. Barnes offered to drive one of the cars, and the seven-passenger car was turned over to him for that purpose only. When they arrived at Greenville, at Barnes' request he was permitted to drive the car on to his home in Sulphur Springs. Barnes wanted to try the balloon tires over the road. He agreed to bring the car back the next morning. The purpose witness had in permitting Barnes to drive the car on trial was because of a former car deal with Barnes, with which the latter had become dissatisfied. Barnes returned the next morning, but failed to bring the car. His explanation was that he wanted to trade for that particular car, and made an offer which witness declined to accept. Barnes then said:

"Well, your car is down there, and my attorney told me not to deliver it to you. It is locked up, without you trade my way."

Witness said:

"I told him that, if that was the way he thought about it, I couldn't do anything. So I turned around and called Mr. Langley, who was manager of the branch house—R. C. Langley, who is manager of the branch house at Dallas."

On cross-examination Shumate testified that, about a month prior to the time of this transaction with Barnes, he had, as a representative of the appellant, sold Barnes a seven-passenger Reo car, and took in exchange a Buick car valued at $1,075 and Barnes' note for $660, payable in monthly installments.

Barnes testified substantially as follows:

At the time of the transaction with Shumate, he was engaged in running a bus line between Greenville and Sulphur Springs. About a month previous he had purchased from the appellant, through its agent, Shumate, a bus for use in his business. Shumate had made certain guaranties regarding the quality of the bus and the amount of gasoline it would consume in operation. The consideration was the Buick car and his note for $660, payable in monthly installments of $82.50. After trial the bus had proved unsatisfactory, and not what it was represented to be. He had stated his dissatisfaction to Shumate on several occasions. When they met in Dallas on June 5, Shumate agreed to let him take the present car in exchange for the bus, upon the payment by Barnes of an additional $215. He stated in some detail the conversation which occurred between him and Shumate at the time he took possession of the car. When they reached Greenville on the occasion referred to, it was getting late, and Shumate said:

"Go on to Sulphur Springs in the car, and in the morning come in and we will change the mortgage, as we have traded."

He did not request Shumate to let him drive the car home, or to Greenville; there was nothing said about driving the car to Sulphur Springs to try out the balloon tires, because he had bought the car. The next morning he drove the car back to Greenville, and met Shumate near where the new car was parked. They talked the matter over, and Shumate said:

"Barnes, we will have to have $500 extra, besides the $215, which makes $715."

Witness said:

"I told him that wasn't the trade, and I couldn't do it. He said the company would not do any better, and said: 'Barnes, I am sorry it is that way. I will have to go see my boss at Dallas, and will make him come clean with you.' I said, 'All right, Roy;' and he said, 'Take the car on back, and come back to-morrow.' I went back the next day in the Reo, and he said they would not do any better. The last car was sitting right across the street, in plain view of where we were sitting in the first car."

Witness further stated that he was ready, willing, and able to pay the $215, and to transfer the mortgage from the bus to the new car. He denied making the statements attributed to him by Shumate as to what his lawyer had said.

The evidence shows that Barnes had left the bus formerly purchased at a garage, where it remained until levied upon and later sold for the payment of the original debt. Barnes retained possession of the new car, under a claim of ownership. This suit was filed within a few days after Barnes and Shumate failed to agree.

Among the errors assigned is the ruling of the court in admitting a stenographic report of Marvin Womack, who testified as a witness for the appellee on a former trial of the case. The admission of that report was objected to on the ground that the witness was still living and a sufficient predicate had not been laid for the introduction of that record. We think the appellee had complied with the requirements in laying the predicate, and that the objection was properly overruled.

For some reason not shown by the record the appellee was permitted to introduce in evidence his abandoned amended original answer and cross-action, and also his second amended original answer and cross-action upon which he went to trial. The pending pleadings were before the court and the jury, not as evidence, but as a statement of facts to be proved by evidence, and they could not legally be used for other purpose. Abandoned pleadings of the opposite party are

sometimes introduced in evidence as admissions against interest, but that rule does not permit a party to use his own abandoned pleadings for the purpose of proving his own alleged facts. Such pleadings, however, may be offered in evidence, when their existence and nature become a proper subject of inquiry. However, the objections made to the introduction of the pleadings are not here presented in a form which requires further consideration.

In its supplemental petition, appellant, among other things, pleaded as follows:

"That Roy Shumate was the only agent, servant, or employee of plaintiff who had any dealings with defendant D. R. Barnes. That Roy Shumate's authority as agent was limited to his soliciting orders for automobiles and selling same for all cash. And where an exchange or trade was contemplated for automobiles, or where the same were sold on part cash and part deferred payments, the same had to be approved and ratified by an officer of the company, and all notes and contracts and mortgages were drawn in Dallas, and Roy Shumate, as agent for the company, had no authority to bind the company, and his only authority was to solicit orders and make sales for cash."

In reply to that, appellee pleaded that he had no notice of any such limitation upon the authority of Shumate; "that the defendant had had transactions with plaintiff, acting by and through the said Roy Shumate, on other occasions, and never at any time was he given notice, or had notice, or was put upon notice, that the said Roy Shumate was not acting, and did not act, within the apparent scope of his authority as salesman and agent for the plaintiff."

During the trial, appellant's president and general manager, Langley, was offered as a witness and interrogated as to the authority of Shumate in representing the appellant as a salesman. If permitted, Langley would have testified that Shumate's authority was limited to soliciting and selling automobiles for cash; that when an exchange of an automobile was to be made, or where same was sold for part cash and part deferred payments, the transaction had to be approved by the Dallas office; that all notes and contracts were drawn in Dallas; that Shumate, as agent, had no authority to bind the appellant otherwise; that he (Langley) had not approved an exchange of cars with Mr. Barnes; that Shumate had not discussed that deal with him. That testimony was excluded on a general objection, stating no specific ground. Shumate was interrogated regarding his authority. If permitted, he would have testified that he did not have authority to make out notes and negotiate trades without approval from the Dallas office; that he did not have authority from the appellant to trade in and exchange new cars for old cars without the latter's approval; that he had no authority to make

automobile transactions, except where he sold one for cash; that under his contract of employment he was expressly limited to making sales of automobiles for cash. The evidence shows that in this transaction Barnes dealt only with Shumate.

■ Appropriate assignments are presented complaining of the ruling of the court in excluding the proffered testimony. That action of the court is defended upon the ground that the testimony offered tended to show a secret limitation upon Shumate's authority contrary to his apparent authority. There are conditions under which the ground above stated would justify the exclusion of such testimony, but we do not think those conditions existed in this case. The general rule is that one who deals with the agent of a corporation must exercise proper diligence to ascertain the authority with which the agent has been clothed. It is equally true that the acts and declarations of the agent alone cannot be relied on as evidence of his authority. Another general rule is that the principal has the right to repudiate the unauthorized contracts of his agent, when acting within the apparent scope of his authority, except in those instances where such repudiation would result in an injury to a third party, who in dealing with the agent was misled by the appearances with which the principal had clothed the agent. The right to hold the principal in such cases to the full extent of the agent's apparent authority is based upon estoppel. To be available, the estoppel must be pleaded and proved. The reason for the rule is stated in this language in Corpus Juris, vol. 2, p. 573:

"For the act of his agent within his express authority the principal is liable, because the act of the agent is the act of the principal. For the acts of the agent within the scope of the authority which he holds the agent out as having, or knowingly permits him to assume, the principal is made responsible, because to permit him to dispute the authority of the agent in such case would be to enable him to permit a fraud upon innocent persons."

■ The testimony offered and rejected tended to prove that Shumate was not authorized to make the contract upon which Barnes relies for title to the car here sued for. The record before us does not justify the court in concluding as a matter of law that the appellant should be estopped to repudiate the contract which Barnes says he made with Shumate. According to Barnes' own testimony, he was informed of the objection of the principal to the terms of the contract before the transaction had been completed. While the car had been delivered, Barnes had neither paid the cash consideration of $215 nor executed the mortgage on the second car. The first car was in a garage, within the reach of Barnes. He had parted with nothing, and nothing had occurred which would cause him an injury, if at that stage of the

transaction appellant had rejected the proposed contract. All Barnes could lose by such a rejection would be the benefits he expected to reap from the exchange of cars.

■ It is doubtful, to say the least, if the evidence is sufficient to warrant the conclusion that Shumate had even the apparent authority to make this contract. Certainly that assumption could not follow as a necessary conclusion from the evidence which was admitted. In the note to Kearns v. Nickse, 10 L. R. A. (N. S.) 1118, the pertinent general rule is thus stated:

"It is a firmly established doctrine that power conferred upon an agent to sell personal property in his possession does not carry with it an implied power or authority to barter or exchange it for other property, and any attempt on the part of the agent to make such a disposition thereof, in the absence of a ratification by the principal, will be void as to the latter, and title thereto will not pass."

See same case in 80 Conn. 23, 66 A. 779, 10 Ann. Cas. 421. The same principle is stated in the following cases: Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611; Frost v. Cattle Co., 81 Tex. 508, 17 S. W. 52, 26 Am. St. Rep. 831; Griffith v. Morrison, 58 Tex. 46; 21 R. C. L. 854–856; 2 Page on Contracts, § 964.

In this case the evidence shows that the selling price of the automobile in controversy was over $1,900. According to Barnes, in the contract made, he was to get that car in exchange for the used car, which had previously been sold to him by Shumate. In addition to that, the appellant was to hold his note formerly given for $660, and only $215 was to be paid in cash. Clearly that was not a sale for cash, but was practically a barter of one car for another and a small cash consideration.

■■ It is contended that the transaction was within the authority of Shumate, because he had sold the first car to Barnes with a warranty which had failed, and that, in making this exchange with Barnes, Shumate was only making that warranty good. It was admitted by Shumate that he had made the usual warranty when he sold the first car, but he denied that there had been any breach of that warranty. The conflict between him and Barnes upon that issue presented a question which the trial court could not determine against the appellant in passing upon the admissibility of the proffered testimony. However, in any event, the warranty was the contract of the principal, and the breach, if any, was a claim against the principal. The mere fact that the warranty was made through the agent did not imply that the agent had authority to make that warranty good by delivering a new car in exchange for the one that was defective.

■ It is also contended that the exclusion of the testimony relating to the limited authority of Shumate was proper, because the controlling issue in this case was: Had there been a sale or a loan of the new car to Barnes? That issue would be controlling only in the event Shumate had authority to make the sale, or in case a situation existed where the appellant would be estopped to repudiate the unauthorized acts of Shumate. These were questions for the jury to pass upon, and the testimony offered, bearing upon those issues and calling for their submission, should not have been excluded.

For the reasons stated the judgment will be reversed, and the cause remanded.

LEVY, J., absent.