BETTY KNOX LONG ET VIR v. HARRYETT H. KNOX ET AL.

No. A-5297. Decided March 7, 1956.

Rehearing overruled May 30, 1956.
(291 S.W. 2d Series 292)

582

*Grimes & Grimes* of Washington, D.C.; *Harrington & Harrington,* of Longview, *Wynne & Wynne, Clarence A. Abramson* and *William A. McKenzie,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the petitioner, as the representative of the estate of W. C. Knox, deceased, for the heirs and creditors of such estate and as an individual, is barred as a matter of law from asserting title to such property because no final judgment was ever entered in said cause, it being dismissed by the trial court for want of prosecution and no showing can be made that the petition as filed obtained any conclusive relief for W. C. Knox. Kirk v. Head, 137 Texas 44, 152 S.W. 2d 726; Riggins v. Thompson, 96 Texas 154, 71 S.W. 14; Permian Oil Co. v. Smith, 129 Texas 413, 73 S.W. 2d 490.

*Dan Moody,* of Austin, *Hurst & Burke,* of Longview, *Fulton Hancock & McClain,* and *Edwin M. Fulton,* of Gilmer, for respondent.

On the questions involved in this litigation cited Hodge v. Ellis, Texas 277 S.W. 2d 900; Kahn v. Kahn, 94 Texas 114, 58 S.W. 825; Smith v. Chipley, 118 Texas 415, 16 S.W. 2d 269.

MR. JUSTICE CULVER delivered the opinion of the Court.

This suit was brought by petitioner, Betty Knox Long, as the child and sole heir of W. C. Knox and as administratrix of

his estate in form of trespass to try title seeking to establish that certain oil properties standing in the name of respondent, Harryett H. Knox, surviving wife of W. C. Knox, were in fact community property of Knox and wife rather than the separate property of the wife.

W. C. Knox and Harryett H. Knox were married in 1929. Each had children by former marriages, but none of this union. In 1940 and 1941 there were conveyed to Mrs. Knox as her separate property and estate oil and gas leases on Lots 9 and 10, Hawkins Townsite, and to Mrs. Knox a mineral deed (but without the separate property recitation) conveying one-half interest in the oil, gas and other minerals under Lot 10. A similar deed conveyed to W. C. Holcombe, the son of Mrs. Harryett H. Knox by a former marriage, a one-half interest in the oil, gas and other minerals in place under Lot 9. Thereafter, Mrs. Knox and W. C. Holcombe reconveyed to the original grantor, Preddy, one quarter of the mineral interest under Lots 9 and 10.

The jury found substantially as follows: (1) That the consideration for the oil and gas leases and mineral interests on and under Lots 9 and 10 was paid from the community funds; (2) that Holcombe at all times held title to the royalty interest under Lot 9 for Harryett H. Knox; (3) that Harryett H. Knox directed that the lease and mineral deeds be placed in her name as her separate property and estate; (4) that W. C. Knox did not cause the oil and gas leases or mineral interest to be made to Harryett H. Knox as her separate estate, with the intention that the property should belong separately to her; (5) that the oil and gas leases were taken in the name of Harryett H. Knox as her separate property with the knowledge and consent of W. C. Knox; (6) that after Knox had gained knowledge that the oil and gas leases were placed in the name of Harryett H. Knox as her separate property he did not agree and acquiesce that it was her separate property; (7) that W. C. Knox knew of and affirmed the taking of the oil and gas leases and the minerals under said lots in the name of Harryett H. Knox as her separate property; (8) that W. C. Knox did know that his wife was holding the property involved in this suit as her separate property; (9) that after Knox gained knowledge that the mineral interest under Lots 9 and 10 was placed in the name of his wife that he did not agree and acquiesce that it was her separate property.

On this verdict the trial court awarded judgment for petitioner, holding the properties to be community and awarding to

her an undivided one-half in the leases and mineral interest in both Lots 9 and 10. The Court of Civil Appeals reversed and rendered for the respondent, 277 S.W. 2d 951. The holding is grounded on the principles of judicial estoppel and sound public policy. The facts are these:

. A creditor having obtained a judgment against W. C. Knox sought to collect by having execution issued and levy made on the oil and gas leasehold on Lots 9 and 10 and the mineral interest in Lot 10 in the Hawkins Townsite which had theretofore been conveyed to Mrs. Knox, the title to all of which stood in her name. Mrs. Knox, joined by her husband, W. C. Knox, filed suit in the District Court of Gregg County to enjoin this execution and levy asserting that the creditors' judgment was void and that the properties belonged solely to Mrs. Knox as her separate estate and that Knox had no interest whatsoever in the property and further that the property had been purchased with the separate funds of Mrs. Knox. The jurat reading: "We have carefully read each and every allegation contained in the plaintiff's original petition and all of said allegations are true and correct," was subscribed to by Harryett H. Knox and W. C. Knox. The district court issued its order temporarily restraining the sheriff from selling the property under execution. No hearing was had and no further order entered in the case except one of dismissal for want of prosecution. The creditor's attorney testified that after further conversation with Knox and his attorney, he came to the conclusion that he could not prevail and proceeded no further.

The Court of Civil Appeals held that Knox, having sworn in the injunction suit that the properties belonged to the separate estate of Mrs. Knox, that he owned no interest in them and hereby effectively preventing sale under execution and levy for the purpose of satisfying a judgment against him, would have been barred from asserting subsequently, in such an action as this, a contrary position and claiming that the properties were community and that he did own a one-half interest. The Court further held on the authority of our opinion in Knox v. Long, 152 Texas 291, 257 S.W. 2d 289, that the petitioner, Mrs. Long claiming under her father, W. C. Knox, and being in privity with him is also barred from making the same claim.

Petitioners contend the Court of Civil Appeals erred for the following reasons: (1) that the injunction suit having been dismissed and no final judgment having been entered the petition became an abandoned pleading and that while aband-

oned pleadings may be considered in evidence they do not work an estoppel, (2) elements of judicial estoppel are not established in this case, (3) the petitioners were not cut off or barred from proving the true state of title to the property, (4) the Court of Civil Appeals erred in applying the rule of "conveyance to defraud creditors" in this case.

Petitioners correctly assert that an admission against interest in an abandoned pleading may be used in evidence against the pleader, but is not conclusive. However, there was no abandonment of the petition in the injunction case. The petition was not amended.

■ The doctrine of judicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. "Under the doctrine of judicial estoppel as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made. 31 C.J.S., Estoppel, Sec. 121, p. 390; Grier v. Canada, 119 Tenn. 17, 107 S.W. 970; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S.W. 313. It has likewise been held that it is not necessary that the party invoking this doctrine should have been a party to the former proceeding. Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 Pac. 561; Corder v. G. B. Sprouse & Co., 20 Tenn. App. 486, 100 S.W. 2d 1001.

■ Although the injunction suit was dismissed and the restraining order expired, the purpose of the affiant was accomplished as thoroughly as if a judgment had been entered in favor of the plaintiffs in that suit. The creditor was convinced and abandoned further efforts. Knox gained the advantage of preventing the property from being sold. Having thus sworn under oath in this judicial proceeding that his wife owned the property in her separate right he would not be heard now to maintain a contrary position in the absence of proof that the averment was made inadvertently or by mistake or by fraud or duress. There was not only no proof of this character but rather the evidence shows conclusively that the affidavit was made voluntarily, with full knowledge of all the facts and with the intention to prevent satisfaction of the judgment against him. Kirby et al v. Fitzgerald et al, 126 Texas 411, 89 S.W. 2d 408; Railroad Commis-

sion v. Arkansas Fuel & Oil Co., Texas Civ. App., 148 S.W. 8d 895, wr. ref.; Dallerman v. Mangold, Texas Civ. App., 271 S.W. 2d 720; Smith v. Chipley, 118 Texas 415, 16 S.W. 2d 269. Petitioners, to support their theory that judicial estoppel will not lie in this case, rely on certain cases which we will discuss.

In Koppelmann v. Koppelmann, 94 Texas 40, 57 S.W. 570, 572, the husband had drawn a deed purporting to convey property to his children in anticipation of a suit by his wife for divorce. The right of the children to recover the land was denied for the reason that there had been no delivery and the execution of the deed was thus not completed. The court said that "a bad intent cannot operate to pass title without the execuion of the deed" and further "but when, for want of the execution of the deed, the title has not passed out of the grantor, he is in no need of a decree restoring it. He protects himself, without the aid of the fraudulent agreement, by simply showing that he has not parted with the property." On the other hand, the Court expressly holds that if the deed had been delivered the grantor would not have been allowed to defeat the children's title by showing that it was made without consideration for the purpose of defrauding creditors and the courts in that case will leave the parties where they find them.

The Court held in Permian Oil Co. v. Smith, 129 Texas 413, 73 S.W. 2d 490, 504, 107 S.W. 2d 564, 111 A.L.R. 1152, that the record owner would not be prevented from defending title, acquired from his grantor, under any available ground even though the grantor had assumed and maintained the position that there was a conflict between two surveys since the record owner was not a party to the former suit and for other reasons. The Court proceeded to say, however, "It is true that if Hickox (the record owner's grantor) himself was seeking to maintain this suit, he would be estopped from asserting any position inconsistent with that which he maintained when he obtained judgment in the former proceeding."

It was held in Bernard River Land Development Co. v. Sweeney, 216 S.W. 2d 597, that a sworn denial of ownership of the land in question in application for a pension by plaintiffs' predecessor in title would not estop plaintiff from claiming title particularly in the absence of any showing that the denial of ownership was made to the defendant or that the defendant knew of such denial. The affidavit had been made a number of years earlier in a wholly disassociated proceeding.

The appellee, in Blackburn v. Blackburn, Texas Civ. App., 163 S.W. 251 in his first suit for divorce filed a sworn inventory and appraisement which did not list certain property as separate property. The first suit was dismissed. He was held not barred in the second suit from listing and claiming the property as separate. He had gained nothing by the first inventory filed. He had not successfully maintained that position. The first petition was abandoned and while admissible in evidence was not conclusive. The holding in Huff v. Maroney, 23 Texas Civ. App. 465, 56 S.W. 754 is substantially to the same effect.

We think none of these cases, for the reasons shown run contrary to the holding of the Court of Civil Appeals in this case.

We also agree with respondents that the title to the oil and gas leases on Lots 9 and 10 vested in Mrs. Knox as her separate property as a matter of law and this is true even though the consideration was found by the jury to have been paid out of community funds. Smith v. Buss, 135 Texas 566, 144 S.W. 2d 529.

Kahn v. Kahn, 94 Texas 114, 58 S.W. 825, is authority for the proposition that where the husband conveyed property to his wife as her separate property and estate his purpose is clearly shown and he may not introduce evidence to show a contrary intent.

The jury found that the assignments of the oil and gas leases were made with the knowledge and consent of W. C. Knox. He was present when the assignments were executed and testimony abundantly supports this finding. In Smith v. Buss, supra, the deed to the wife was made at the direction of the husband reciting a consideration paid and to be paid out of her separate funds and estate. Nothing was said in the granting, habendum or warranty clauses about the land being conveyed as the separate property or estate of the wife. After the death of the wife the husband inventoried the property as community and purported to sell under his right as community survivor. In a suit brought by the children of deceased against the purchasers from the community survivor the trial court's judgment against them was reversed and rendered, the court holding that the facts that the deed was drawn according to the husband's direction; that he drew the check for the consideration on a common bank account in which separate funds of the wife had been deposited, together with the recitation in the deed compelled

the conclusion that "at the very time this land was conveyed Mr. and Mrs. Rives legally intended that she should take in her separate right."

In the very recent case of Hodge v. Ellis, 154 Texas 341, 277 S.W. 2d 900, we had before us a very similar situation. Real estate had been conveyed by a third party to the wife as her separate property. After her death the question arose as to whether or not the property was community or separate. The husband testified that he had no knowledge of nor had he consented to the terms of the deed in so far as they purported to make the conveyance the separate property of the wife. We held there, in reversing the courts below, in effect, that despite denial of knowledge and consent on the part of the husband yet the facts that he admitted generally to know about his wife's dealings plus the fact that he signed the note and the deed of trust, conclusively showed knowledge and consent on his part as a matter of law and thus having knowledge of and giving his consent to the transaction the intent of the parties was established as a matter of law. We, therefore, hold that in the absence of any pleading or proof that the conveyances to Mrs. Knox were executed by accident, fraud or mistake, the title in her separate estate is conclusively established and Knox would be precluded from offering testimony to show a contrary intent. This rule is likewise applicable to the petitioner, Mrs. Long, who claims under her father, W. C. Knox, and is in privity with him. Knox v. Long, 152 Texas 291, 257 S.W. 2d 289.

While to some extent the findings of the jury seem to be conflicting no complaint is made on that score. We further hold that there was no evidence to support the jury's findings that Knox, after he learned of the conveyance to Mrs. Knox, did not acquiesce and agree that it was her separate property.

The matters of fact that, petitioners say, show an intention on the part of Knox that the property was to be community and not separate consists of the following documents:

A drilling contract was executed by the parties on Lots 9 and 10 where reference is made in the body of the instrument to Mr. and Mrs. Knox as the owners of the estate. But the instrument begins by saying: "This agreement made and entered into this the 18th day of April, 1941 by and between Harryett H. Knox, joined by her husband, W. C. Knox of Gregg County, Texas, hereinafter referred to as owners and Harry Shulman of Gregg County, Texas, hereinafter referred to as contractor."

The fact that the plural word "owners" is used instead of the singular form, we think, is not entitled to probative weight. The same applies to the oil payment to Harry Shulman which reads: "We Harryett H. Knox and husband, W. C. Knox, for and in consideration of the sum of $10.00 and other good and valuable considerations cash to us in hand paid by Harry Shulman, etc."

■ Copies of joint income tax returns of Mr. and Mrs. Knox were offered in evidence. Some of these returns include income from oil runs from the properties, but there is no distinction made in the returns as to whether the income was separate or community. The Federal income tax law at the time authorized the husband and wife to make joint returns and lump together all income whether separate or community and pay the tax based on the total income. 26 U.S.C.A., 51 (b) (1). Consequently the filing of a return as provided by law has no bearing on the intention of the parties as to the character of the properties, whether separate or community.

■ The third document relied on by petitioners is a divorce petition filed by Knox against his wife two or three years after the acquisition of the oil properties. In this petition Knox asserted that these properties were community and prayed for a division. The suit was later dismissed and Knox advised the oil companies to release the returns that had been impounded and to pay Mrs. Knox as had theretofore been done. We think this self-serving declaration of Knox in his petition would not have been admissible in evidence had he been a party to this suit seeking to deny the separate right of his wife. 20 Am. Jur., Evidence, Sec. 649; Hearon v. Jackson, Texas Civ. App. 109 S.W. 2d 230; Edwards v. Osman, 84 Texas 656, 19 S.W. 868; Downs v. McCampbell, 203 S.W. 2d 302; Reo Motor Car Co. v. Barnes, 9 S.W. 2d 374, and MacDonnell v. De Los Fuentos, 7 Texas Civ. App. 136, 26 S.W. 792. Therefore, the declaration is not admissible in evidence in behalf of the daughter in her own right.

■ The jury's finding that Holcombe at all times held title to the royalty interest under Lot 9 for his mother, Harryett H. Knox, we think finds support in the evidence. In the beginning Mrs. Knox paid $300.00 for the leases and mineral interest in both lots. The lease on one lot was taken in Holcombe's name admittedly for the purpose of securing permits to drill on both lots. When only one permit was secured the lease was reassigned to Mrs. Knox. Holcombe himself testified that at first he was

holding the title to the mineral interest under Lot 9 for his mother but that later on she orally gave him the equitable title as a fee for representing her and Mr. Knox in a lawsuit. Holcombe, being an interested party, the jury was not bound to accept all of his testimony at face value. The jury found that the consideration for the leases and mineral interest on both lots came from community funds. We, therefore, hold that this ¼th royalty interest was a part of the community estate of Knox and wife and one-half belonged to the estate of W. C. Knox. The petitioner, Mrs. Long, is entitled to recover this interest as administratrix and as the heir of her father.

We further hold that the oil and gas leases on Lots 9 and 10 and the royalty interest under Lot 10 are the property of Mrs. Knox, the respondent.

The judgment of the Court of Civil Appeals is modified to the above extent and as modified is affirmed.

Opinion delivered March 7, 1956.

ON REHEARING

MR. JUSTICE CULVER delivered the opinion of the Court.

In her motion for rehearing petitioner complains of "the failure to so modify the judgment of the Court of Civil Appeals as to give the petitioner her part of the money held by the defendant, Humble Oil & Refining Company, credit of the one-half of the one quarter royalty this court purports to award the petitioner."

To this respondents reply that no oil or gas has ever been produced from Lot 9 and for that reason petitioner's ownership of an undivided one-half of the one-fourth royalty under Lot 9 would not authorize her to share in the proceeds from oil and gas produced from Lot 10.

On this point we agree with petitioner. The lease to which Holcombe was a party covers both Lots 9 and 10 and specially provides that the premises shall be developed and operated as one lease, all royalties accruing thereunder shall be treated as an entirety and shall be divided among and paid to the separate owners in proportion that the acreage owned by each bears to the entire leased acreage. Furthermore, Mrs. Knox and her son have treated the two lots as unitized and since production was obtained on Lot 10 in 1947, returns have been paid

to Holcombe or held for his benefit according to the proportionate interest which stood in his name.

Holding as we have in our original opinion that the royalty interest in Lot 9 is the community property of respondent, Mrs. Knox, and her deceased husband, this property and the proceeds therefrom are subject to the payment of community debts. The balance will be divided between petitioner and respondent.

As considerable returns from this property have been impounded since the filing of this suit, we therefore remand the case to the trial court for a determination of the amount of money due the respective parties and a judgment in accordance with this opinion. Otherwise the motion for rehearing is overruled.

Opinion delivered May 30, 1956.