Terry MOORE, Appellant,

v.

George NEFF, Executor of the Estate of Annette Gano Lummis; Avis Hughes McIntyre, and Norton Bond, Executor of the Estate of Rush Hughes; and Barbara Cameron, Elspeth Depould and Agnes Roberts, Appellees.

No. B2947.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 4, 1982.

Leslie M. Werlin, Arthur Leeds Law Offices, Los Angeles, Cal., for appellant.

Thomas L. Schubert, Berry D. Bowen, Andrews, Kurth, Campbell & Jones, Wayne

Fisher, Fisher, Roch & Gallagher, Houston, Paul L. Freese, Kindel & Anderson, Los Angeles, Cal., Fred C. Weekley, Bracewell & Patterson, O. Theodore Dinkins, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, Jack McGinnis, San Antonio, Joseph L. Grimbrone, San Diego, Cal., James W. Cox, Shapiro, Forbes, & Cox, Alma Victoria Hughes, Houston, Alyce Hughes, Atlantic City, N. J., Daniel Kirschbaum, Houston, Harold Jordan, Doherty, Rumble & Butler, St. Paul, Minn., Richard Sullivan, Saccomanno, Clegg, Martin & Kipple, Houston, George Dean, Destin, Fla., Victor William DeVrien, Ely, Nev., Charles Ireland, St. Louis, Mo., Mark E. Smith, Touchstone, Bernays, Johnson, Beall & Smith, Dallas, W. A. Jones, Houston, C. Alex Meacham, Smyrna, Tenn., Edward Lindsey, Houston, Stella M. Mobley, New Orleans, La., Ollie Blan, Jr., Spain, Gillon, Riley, Tatt & Ehteredge, Birmingham, Ala., Wallace T. Shanks, Williams & Shanks, Houston, Dave West, Cost Mesa, Cal., J. P. Darrouzet, Austin, Sherwin Markman, Hogan & Gartson, Washington, D. C., Mary R. Hughes, Seattle, Wash., Rich Harrison, Patton, Lochridge, McGinnis, Lochridge & Kilgore, Austin, P. J. Murphy Harmon, George J. Parnham, Houston, for appellees.

Before PAUL PRESSLER, SAM ROBERTSON and MURPHY, JJ.

PAUL PRESSLER, Justice.

This appeal originates from the denial of a claim brought by appellant, Terry Moore, also known as Helen Cramer, against the estate of Howard Hughes pending in Probate Court No. 2 of Harris County. Hughes died aboard an airplane in route to Houston on April 5, 1976. Shortly after Hughes' death, administration was taken on his estate in Harris County. Annette Gano Lummis, Hughes' aunt and closest living relative, was appointed temporary co-administratrix.

On March 25, 1980, George F. Neff, Executor of the Estate of Annette Gano Lummis, deceased, filed an application to determine heirship in the Hughes Estate. Terry Moore filed her claim of heirship alleging that she was married to Hughes in a ceremony performed at sea. Upon motion of the appellees, summary judgment was granted, dismissing Moore's claim with prejudice.

Moore alleges that she first met Howard Hughes in 1948 in Beverly Hills, California. Shortly thereafter, they exchanged "marriage vows" one evening on a lovers lane, Mulholland Drive, in Los Angeles. Moore's testimony indicates that she did not regard this as a valid marriage and asserts no claim arising from this "marriage ceremony."

Moore states that in 1949 she flew with Hughes from Culver City, California to San Diego. Upon their arrival in San Diego, she and Hughes allegedly boarded a yacht to be married at sea. At some undetermined point during this voyage, Moore states she and Hughes were married by the captain, C. B. Flynn Sr., now deceased, in the presence of Moore's mother and certain others.

Moore is unable to name the vessel upon which this event took place or give its date. No marriage license was ever issued to Howard Hughes and Terry Moore. Moore has stated that she knows of no documents, past or present, public or private, that would in any way evidence her claim. During the ensuing three decades after her alleged marriage to Howard Hughes, Moore married three other individuals, Glen Davis, Eugene McGrath and Stewart Cramer.

The appellees contend that the doctrine of judicial estoppel controls. This court agrees. In *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (Tex.1956), the Supreme Court of Texas enunciated the doctrine with these words:

The doctrine of judicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. '*Under the doctrine*

*of judicial estoppel*, as distinguished from equitable estoppel by inconsistency, *a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made.*' 31 C.J.S. Estoppel § 121 p. 390; *Grier v. Canada*, 119 Tenn. 17, 107 S.W. 970; *Sartain v. Dixie Coal & Iron Co.*, 150 Tenn. 633, 266 S.W. 313. It has likewise been held that it is not necessary that the party invoking this doctrine should have been a party to the former proceedings. *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 290 P. 561, 72 A.L.R. 587; *Corder v. G. B. Sprouse & Co.*, 20 Tenn.App. 486, 100 S.W.2d 1001. (emphasis added).

In *Yarber v. Pennell*, 443 S.W.2d 382, 384 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.), the court stated that

the purpose of the doctrine of judicial estoppel is to suppress fraud, *and to prohibit the deliberate shifting of position to suit exigencies of each particular case that may arise concerning the subject matter in controversy*; but at least in so far as this doctrine is applied to statements under oath, its distinctive feature has been said to be the expressed purpose of the court, on broad grounds of public policy, to uphold the sanctity of an oath, *and to eliminate the prejudice that would result to the administration of justice if a litigant were to swear one way one time and a different way another time.* (citations omitted). (emphasis added).

■ The doctrine of judicial estoppel bars a party who successfully maintains a position in a prior judicial proceeding from afterward adopting an inconsistent position if so doing would result in prejudice to his adversary. *Long v. Knox, supra;* `Yarber v. Pennell, supra; Van Deusen v. Connecticut General Life Insurance Co.*, 514 S.W.2d 951 (Tex.Civ.App.—Ft. Worth 1974, no writ.).

The facts showing appellees to be entitled to summary judgment on the theory of judicial estoppel may be simply stated. In 1970 Stewart W. Cramer filed a petition for dissolution of his marriage to Terry Moore in the Superior Court of California. He alleged under oath that the parties were married on June 28, 1959 and that two children were born of this marriage. Terry Moore answered Cramer's petition and declared under oath that the allegations in Cramer's petition were correct. She also requested that the court award her child custody, child support, spousal support, community property and attorney fees. In January, 1972, the court entered an interlocutory judgment that Terry Moore have custody of the children of the marriage, and that Terry Moore be awarded the family home and one of the family automobiles as her separate property. This judgment became final in April, 1972.

In June 1980, Terry Moore filed her claim of heirship and alleged that she and Howard Hughes were married

in or about approximate 1948 when they, at that time, mutually agreed to be and become husband and wife and, at all times thereafter, until the death of deceased, remained together as husband and wife by law, no divorced (sic) having been sought or obtained dissolving such marriage.

■ The elements required to trigger the estoppel are: (1) the prior inconsistent statement must have been made in a judicial proceeding; (2) the party now sought to be estopped must have successfully maintained the prior position; and (3) the prior inconsistent statement must not have been made inadvertently or by mistake, fraud or duress. *Long v. Knox, supra*, 291 S.W.2d at 295. Moore's sworn statement in the California judicial proceedings that she was married to Cramer is clearly inconsistent with her sworn statements in these proceedings that she was married to Hughes at the time. Further, Moore obviously successfully maintained this position as she was awarded custody of the children and received property. Having done so, Moore cannot now be heard to maintain a contrary position in the absence of proof that the statement was made inadvertently or by mistake, fraud or duress. There was not only no proof of this character but rather Moore's own sworn affidavit in these proceedings alleged that

[a]t all times since the ceremony, I have truly believed that the ceremony was proper in all respects and that I was legally and validly married to Hughes... My later 'marriages' to Stewart Cramer and Eugene McGrath were due to my deep desire to bear children which Hughes refused to permit me to do. These relationships were not the result of any belief on my part that I was not still married to Hughes.

The burden was upon Moore to respond and raise a fact issue by presenting summary judgment evidence that the sworn statements in the *Cramer* case were made inadvertently or by mistake due to fraud or under duress. Judicial estoppel was established as a matter of law. *Simpson v. Simpson*, 380 S.W.2d 855 (Tex.Civ.App.— Dallas 1964, writ ref'd n. r. e.).

A defendant's motion for summary judgment may (also) rest upon a clear demonstration by the record that the cause of action is barred, *as a matter of law*, by affirmative legal defenses such as estoppel ... (emphasis in original).

*Simpson, supra* at 859; *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *"Moore" Burger Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972). The granting of summary judgment was justified. The judgment of the trial court is sustained.

Affirmed.