The STATE BAR OF TEXAS, Appellant,

v.

Robert Allen MOORE, Appellee.

No. 08–95–00328–CV.

Court of Appeals of Texas,
El Paso.

May 30, 1996.

Rehearing Overruled Aug. 7, 1996.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from an order reinstating Appellee as a member of the State Bar of Texas. We reverse and render judgment refusing Appellee's application for reinstatement as an attorney.

### I. SUMMARY OF THE EVIDENCE

Appellee was disbarred as an attorney and counselor at law in the State of Texas by judgment dated March 30, 1990. The basis of the disbarment judgment stemmed from Appellee's conduct in securing two loans from two sisters, Mary and Blanche Taylor, whose nephew, Mark Taylor, worked in Appellee's law firm. Mr. Taylor retained Appellee to handle the estate of Mr. Taylor's father. Appellee, who was in serious financial trouble, learned that Mr. Taylor's aunts, the Taylor sisters, were wealthy. Appellee sought help from Mr. Taylor in procuring loans from the Taylor sisters in excess of $930,000. At the disbarment trial, the State Bar alleged that Appellee told the Taylor sisters that he could no longer work on Mr. Taylor's case involving the probate matter without these loans and that he would repay the loans with income from cases he would settle. The jury found that Appellee engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, and the trial court entered an order disbarring him from the practice of law. At the time he was disbarred, Appellee was a petitioner in federal bankruptcy court.

On March 31, 1995, Appellee filed a petition for reinstatement. At the reinstatement hearing, Appellant alleged that Appellee's petition for reinstatement was fatally defective because it did not assert that Appellee made complete restitution to the Taylor sisters.[1] The trial court granted Appellee's petition, which precipitated this appeal.

Dawn Miller, Office of the General Counsel, Linda Acevedo, Assistant General Counsel, Austin, for Appellant.

Michael McLeaish, Odessa, Jack N. Price, Austin, Benny J. Lowe, Odessa, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

1. Appellee admits that he still owes the Taylor sisters over $500,000:
   Q. You received, did you not, all of the loan proceeds amounting to some $930,000?
   A. Yes, I did.
   Q. And as you sit here today, the amount of that that's been repaid to the aunts is what amount?

   A. $401,000, I believe.
   Q. So, then it's not accurate to say that you did not profit from the transaction because you certainly got the benefit of the difference between what you received of the loan proceeds and what you paid the aunts back?
   A. That's certainly true.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in five points of error. In its fourth point of error, Appellant contends that the trial court erred "in granting Moore's petition for reinstatement because the evidence is both legally and factually insufficient to support the finding that Moore's petition sufficiently complies with Rule 11.02(D) of the Texas Rules of Disciplinary Procedure."

Findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402 (Tex. App.—El Paso 1994, writ denied). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

Appellant contends that Rule 11.02 of the Texas Rules of Disciplinary Procedure specifies in clear and unambiguous terms the requirements to be contained in a petition for reinstatement and that failure to set forth such information renders one ineligible for reinstatement. We agree.

TEX.R.DISCIPLINARY P. 11.02 (1992), reprinted in TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon Supp.1996), provides:

A petition for reinstatement shall be verified and shall set forth all the following. information:

A. The name, age, and residential address of the petitioner.

B. The offenses, misconduct, or convictions upon which the disbarment or resignation was based.

C. The name of the body or entity where the Disciplinary Action was adjudicated and the identity of the Committee before whom the Just Cause hearing was held.

D. **A statement that the petitioner has made restitution to all persons, if any, naming them and their current addresses, who may have suffered financial loss by reason of the offenses, misconduct, or Serious Crimes for which the petitioner was disbarred or resigned,** and that the petitioner has paid all costs and fines assessed in connection with the Disciplinary Action that resulted in his or her disbarment.

E. A statement that at the time of the filing of the petition the petitioner is of good moral character, possesses the mental and emotional fitness to practice law, and during the five years immediately preceding the filing of the petition, has been living a life of exemplary conduct.

F. A statement that the petitioner has recently read and understands the Texas Disciplinary Rules of Professional Conduct; that he or she has recently read and understands the Texas Lawyer's Creed—A Mandate For Professionalism; that he or she has a current knowledge of the law; and that the public and profession will be served by the petitioner's reinstatement.

G. A listing of the petitioner's occupations from the date of disbarment or resignation, including the names and current addresses of all partners, associates, and employers, if any, and the dates and duration of all such relationships and employment.

H. A statement listing all residences maintained from the date of disbarment or resignation, and the current names and addresses of all landlords.

I. A statement of the dates, cause numbers, courts, and the general nature of all civil actions in which the petitioner was a party or in which he or she claimed an interest, and that were pending at any time from the date of disbarment or resignation.

J. A statement of the dates, cause numbers, courts, the general nature and disposition of all matters pending at any time from the date of disbarment or resignation and involving the prosecution of the petitioner for any crime, felony, or misdemeanor, together with the names and current addresses of all complaining persons in each such matter.

K. A statement whether any application for a license requiring proof of good moral character for its procurement was filed at any time after the disbarment or resignation and, for each application, the name and address of the licensing authority and the disposition of the application.

L. A statement explaining any proceeding or Inquiry after the date of disbarment or resignation concerning the petitioner's standing as a member of any profession or organization or holder of any license or office that involved censure, removal, suspension of license, revocation of any license, or discipline of the petitioner and the disposition thereof, and the name and address of each authority in possession of the records.

M. A statement whether any allegations or charges, formal or informal, of fraud were made or claimed against the petitioner at any time after the disbarment or resignation and the names and current addresses of the persons or entities making such allegations or charges.

The petitioner has a duty to amend and keep current all information in the petition until the petition has been heard and determined by the trial court. (Emphasis added).

It is undisputed that Appellee's petition contained all of these allegations except for the 11.02(D) restitution statement. While Appellee concedes that the petition requirements are in fact eligibility requirements, he argues that the statement of restitution refers only to a petitioner's legal obligation to pay restitution. The contents of his petition clearly reflect this position. We disagree with this narrow construction.

Instead of the 11.02(D) statement, Appellee set forth the following information in his petition:

Petitioner was not required by the judgment of disbarment to make restitution to any person, and the State Bar of Texas waived any right or claim of restitution at the State Court trial when they represented to the Court that they were not seeking restitution from Petitioner. Furthermore, the United States Bankruptcy Court ... specifically ordered and enjoined the State Bar of Texas from pursuing Petitioner for restitution claims or using disciplinary proceedings as a means to seek restitution from Petitioner for claims involving the conduct for which Petitioner was disbarred....

\* \* \* \* \* \*

Further, as a result of representations made over the telephone by the State Bar of Texas ... and later in a pleading ..., the United States Bankruptcy Judge, Ronald B. King, permanently enjoined the State Bar of Texas "from pursuing Robert Allen Moore ... for monetary damages or restitution claims involving Mary and Blanche Taylor and the debt to be repaid through the Plan of Reorganization here confirmed".

Although this statement does not conform to the clear, unambiguous language of Rule 11.02, the trial court found that it "sufficiently complies with Rule 11.02(D) of the Rules of Disciplinary Procedure."

### Restitution Requirements Within the Framework of the Texas Rules of Disciplinary Procedure

The Texas Rules of Disciplinary Procedure provide an extremely well thought out and workable restitutionary scheme. Within such scheme, the restitutionary obligations are triggered by the manner and reasons for which the attorney was disbarred. As will be shown, there exists both legal and ethical obligations for restitution which depend both on the underlying conduct for which the attorney was disbarred and the purposes of restitution within the procedural time frame.

#### 1. Restitution as a Legal Obligation

The Rules of Disciplinary Procedure make restitution mandatory in certain instances.

Article 10, § 23(d) of the State Bar Rules,[2] which governed at the time of Appellee's disbarment, and Rules 2.18 and 3.12, the successors to Section 23(d), require the disbarment judgment to order restitution if the proof establishes that the attorney's conduct involved misapplication or misappropriation of client funds.

### a. Misapplication

The Texas Rules of Disciplinary Procedure define a crime involving misapplication of money or other property held as a fiduciary as an "intentional crime." TEX.R.DISCIPLINARY P. 1.06(O) (1992); *cf.* TEX. PENAL CODE ANN. § 32.45 (Vernon 1994) (concerning misapplication of fiduciary property or property of financial institution). When an attorney licensed to practice law in Texas has been convicted of an intentional crime, the State Bar must initiate a disciplinary action seeking compulsory discipline. TEX.R.DISCIPLINARY P. 8.01 (1992). "When an attorney has been convicted of an Intentional Crime, ... the attorney **shall** be disbarred unless the Board of Disciplinary Appeals ... suspends his or her license to practice law." (Emphasis added). TEX.R.DISCIPLINARY P. 8.05 (1992).

In addition to mandatory discipline, an attorney who misapplies client funds will be legally obligated to make restitution. Article 10, § 23(d) of the State Bar Rules provided, in pertinent part:

> In all cases in which the proof establishes that the respondent's conduct involved **misapplication of client funds** and the court determines that **suspension** is the appropriate measure of discipline, **the judgment shall require that restitution be made** during the term of suspension and shall provide that failure to do so shall cause the suspension to remain in effect indefinitely thereafter and until evidence of satisfactory restitution is made by the respondent and is appropriately verified by counsel. (Emphasis added).

TEX.R.DISCIPLINARY P. 3.12 (1992), which was adopted effective May 1, 1992, contains a similar restitutionary framework:

> In all cases in which the proof establishes that the Respondent's conduct involved **misapplication of funds** and the judgment is one **disbarring or suspending** the Respondent, **the judgment must require the Respondent to make restitution**.... (Emphases added).

Thus, the State Bar, quite appropriately, (1) realizes the opportunities that an attorney has to misapply funds, and (2) attempts to discourage such misconduct by mandatory discipline and mandatory restitution.

### b. Misappropriation

The Rules define the reckless misappropriation of money or other property as a "Serious Crime." TEX.R.DISCIPLINARY P. 1.06(u) (1992); *cf.* TEX. PENAL CODE ANN. § 31.03 (Vernon 1994 & Supp.1996) (pertaining to theft). "If an attorney's sentence upon conviction of a Serious Crime is fully probated, or if an attorney receives probation through deferred adjudication in connection with a Serious Crime, the attorney's license to practice law **shall** be suspended during the term of probation." TEX.R.DISCIPLINARY P. 8.06 (1992).

As with misapplication of client funds, the Rules provide for mandatory restitution when an attorney is shown to have misappropriated funds:

> In all cases in which the proof establishes that the Respondent's misconduct involved the **misappropriation of funds** and the Respondent is **disbarred or suspended**, the panel's **judgment must require the Respondent to make restitution** during the period of suspension.... (Emphasis added).

TEX.R.DISCIPLINARY P. 2.18 (1992).

### c. Purpose of Restitution Requirement at Disbarment

Restitution at the time of disbarment is intended to protect the injured client and to

---

2. The Supreme Court of Texas has promulgated the Rules of Disciplinary Procedure, which apply to all attorney disciplinary and disability proceedings commenced on or after May 1, 1992 and repeal Article X, §§ 1–8 and 10–38 of the State Bar Rules except to the extent that they apply to pending disciplinary matters. *See* TEX.R. DISCIPLINARY P. 1.04 (1992), reprinted in TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon Supp.1996). Because the disciplinary proceedings against Appellee were brought prior to May 1, 1992, the State Bar Rules apply.

compensate the client for any financial loss. As contemplated by the Rules, mandatory restitution at disbarment concerns the antediluvian notion that one who is unjustly enriched at the expense of another must make restitution. *See* RESTATEMENT OF RESTITUTION § 1 (1936) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."); *see also Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex.1982) (noting that purpose of restitution is "to prevent unconscionable loss to the party paying out the funds and unjust enrichment to the party receiving the payment").

### d. Order of Restitution not Required in Appellee's Disbarment Judgment

■ Appellee, referring to mandatory restitution, avers that "the judgment of disbarment must expressly require restitution, or else no restitution is due." We disagree.

Appellee was not disbarred for conduct defined as a "serious" or "intentional" crime. Rather, he was disbarred for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. The Rules do not require mandatory restitution when an attorney is disbarred for such conduct. Instead, TEX.R.DISCIPLINARY P. 1.06(t) (1992) provides for optional restitution:

The term "Sanction" may include the following **additional** ancillary requirements:
a. Restitution (which may include repayment to the Client Security Fund of the State Bar of any payments made by reason of Respondent's Professional Misconduct).... (Emphasis added).

### 2. Restitution as a Moral Obligation

### a. Purpose of Restitution Requirement at Reinstatement

■ Before a disbarred person may be reinstated as an attorney, he must make complete restitution to all persons who may have suffered financial loss because of his misconduct. *State v. Arnett*, 385 S.W.2d 452, 454 (Tex.Civ.App.—San Antonio 1964, writ

ref'd n.r.e.); *see* TEX.R.DISCIPLINARY P. 11.02(d). There are two fundamental purposes for this requirement. Primarily, however, this requirement is imposed to help the State Bar make a functional assessment of the character and fitness of the person wishing to be reinstated.

First, restitution is required before reinstatement to ensure that the disbarred attorney has recognized his wrongful conduct. "Restitution is fundamental to the goal of rehabilitation." *Hippard v. State Bar of California*, 49 Cal.3d 1084, 264 Cal.Rptr. 684, 690, 782 P.2d 1140, 1146 (1989). The thought behind this requirement is quite simple: one who has recognized his wrongful conduct will be less apt to repeat that conduct in the future. *See Brookman v. State Bar of California*, 46 Cal.3d 1004, 251 Cal.Rptr. 495, 497, 760 P.2d 1023, 1026 (1988) ("Restitution imposed as a condition of probation serves the state interest of rehabilitating culpable attorneys (and protecting the public) by forcing the attorney to 'confront, in concrete terms, the harm his actions have caused.'") (quoting *Kelly v. Robinson*, 479 U.S. 36, 49 n. 10, 107 S.Ct. 353, 360 n. 10, 93 L.Ed.2d 216 (1986)); *People v. Sullivan*, 802 P.2d 1091, 1096 (Colo.1990) (opinion that one reason for restitution requirement "is for the (petitioner) to demonstrate his rehabilitation prior to reinstatement").

■ Second, restitution is designed to protect the prospective clients of the person wishing to be reinstated. Although discussing the moral character and fitness requirements of a first time applicant, we find the words of the RULES GOVERNING ADMISSION TO THE BAR OF TEXAS instructive: [3]

The purpose of requiring an Applicant to possess present good moral character is to exclude from the practice of law those persons possessing character traits that are **likely to result in injury to future clients,** in the obstruction of the administration of justice, or in a violation of the [Disciplinary Rules].... There may be other character traits that are relevant in

---

3. The Rules of the State Bar have "the same effect as statutes." *State Bar of Texas v. Wolfe*, 801 S.W.2d 202, 203 (Tex.App.—Houston [1st

Dist.] 1990, no writ); *see State Bar of Texas v. Edwards*, 646 S.W.2d 543, 544 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

the admission process, but such traits must have a rational connection with the Applicant's present fitness or capacity to practice law and accordingly must relate to the **legitimate interests of Texas in protecting prospective clients** and in safeguarding the system of justice within Texas. (Emphasis added).

RULES GOVERNING ADMISSION TO THE BAR OF TEXAS IV(b) (1992), promulgated under TEX. GOV'T CODE ANN. § 82.022(b) (Vernon 1988). We believe that such statement is equally, if not more, applicable to a disbarred attorney whose conduct has resulted in injury to clients.[4]

A disbarred attorney who makes restitution also shows the laudable trait of financial responsibility. In *Board of Law Examiners v. Stevens*, 868 S.W.2d 773 (Tex.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2676, 129 L.Ed.2d 811 (1994), the Supreme Court determined whether a person exhibiting long-standing financial irresponsibility met the minimum standards for moral character and fitness contained in the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT. Stevens, licensed to practice law in Mississippi, applied to join the Texas Bar. The bar application required Stevens to disclose whether he had any debts more than 90 days past due. Although Stevens failed to file a single federal income tax return for fourteen years, he failed to disclose this information on the application. The Board learned of Stevens failure to file tax returns, held a hearing, and determined that Stevens did not possess the requisite good moral character because he "demonstrated a marked disrespect for the law" and he "demonstrated a longstanding lack of financial responsibility." The trial court held that the Board's decision was not supported by "substantial evidence," and the court of appeals affirmed.

In reversing the court of appeals and finding that substantial evidence supported the Board's conclusion that Stevens would probably injure a client or violate the ethical rules if admitted to practice in Texas, the Supreme Court noted:

> Because an attorney must act as a counselor and advisor and is frequently entrusted with responsibility for clients' assets and affairs, it is apparent to us that **there is a "clear and rational connection" between** disrespect for the law and **financial irresponsibility** on the one hand, **and "the likelihood that [an] applicant would injure a client,"** on the other. (Emphases added).

*Stevens*, 868 S.W.2d at 781 (citing TEX.GOV'T CODE ANN. § 82.028(c)(1) (Vernon 1988)). We find this statement persuasive and note that even the most conservative reading of *Stevens* indicates that marked financial irresponsibility may be considered a negative character trait that reflects on the moral character and fitness of one wishing to practice law.

Appellee asserts at oral argument that "he has had a windfall" but "I don't see that it's it's (sic) adverse to the interests of the profession." We fail to see how being disbarred for dishonesty, fraud, and deceit because of improperly procuring loans from two elderly ladies, not paying back over $500,000 of the loans, and then being released on the public to, perhaps, do the same thing could not be, at least arguably, adverse to the interests of the profession. Regardless, making no findings on Appellee's fitness to practice law or the likelihood that he would engage in future misconduct, we find as a matter of law that TEX.R.DISCIPLINARY P. 11.02(d) imposes a mandatory restitution requirement before an attorney may be reinstated to the Texas Bar.[5] *See Hippard*, 264 Cal.Rptr. at 689–90, 782 P.2d at 1145 (finding that requirement of restitution as a condition for reinstatement was appropriate despite discharge of the underlying debt in bankruptcy); *Brookman*, 251 Cal.Rptr. at 498, 760 P.2d at 1027 (holding that "nothing in the Bankruptcy Act, or in the cases interpreting that act, prevents

---

4. Indeed, the right to practice law is a very great privilege. With this privilege comes an equal dose of responsibility.

5. Were we to hold otherwise, some rather unfortunate scenarios could develop. What would

stop a disbarred attorney, ordered to pay restitution by the disbarment judgment, from running off to bankruptcy court to discharge her debts, and then petitioning for reinstatement with "clean hands?"

imposition of restitution as a condition of probation in an attorney disciplinary matter—even if the underlying subject of the restitution has previously been discharged in bankruptcy, and thus cannot be collected as a debt as such"); *Sullivan*, 802 P.2d at 1096 (concluding that "an order of restitution is warranted even though the probate court judgment was a claim in the bankruptcy proceedings" and ordering that attorney "be required, as a condition of reinstatement, to pay restitution to the (injured client)"). Such a requirement would serve the purpose of both rehabilitating the attorney and protecting the public from professional misconduct.

### b. *Judicial Estoppel*

■ Appellee asserts that Appellant is judicially estopped from seeking restitution. Specifically, Appellee alleges that Appellant represented during the disbarment trial that it was not seeking and had not asked for restitution from Appellee.

■ The doctrine of judicial estoppel bars a party, who has successfully maintained a position in a prior judicial proceeding, from later embracing an inconsistent position, unless that party can show the prior statement was made inadvertently due to fraud, mistake, or duress. *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Owen v. Knop*, 853 S.W.2d 638, 641 (Tex. App.—Corpus Christi 1993, writ denied). One may not profess a position contrary to that alleged or admitted under oath in a former proceeding. *Long*, 291 S.W.2d at 295; *Miles v. Plumbing Servs. of Houston, Inc.*, 668 S.W.2d 509, 512 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ In the instant case, we find that Appellee has not adopted any position inconsistent from that taken in the disbarment trial. At both the disbarment trial and the reinstatement trial, Appellant unequivocally stated that it was not seeking restitution on behalf of the Taylor sisters. As stated in its brief before this Court:

> [T]he State Bar is not attempting to collect a debt in the reinstatement suit. The State Bar is simply requiring Moore to comply with the provisions and mandates of the rules governing reinstatement. Whether Moore ever repays the $500,000 to the Taylor sisters matters not to the State Bar. What does matter is that Moore be required to comply with the mandates of the reinstatement provisions.

Accordingly, finding that Appellant has not espoused an inconsistent position at a prior judicial proceeding,[6] and holding that TEX.R.DISCIPLINARY P. 11.02(d) imposes a mandatory restitution requirement before an attorney may be reinstated to the Texas Bar, we sustain Appellant's Point of Error No. Four.

Having sustained Appellant's Point of Error No. Four, we need not address the remaining points. We reverse the judgment of the trial court and render judgment refusing Appellee's application for reinstatement as an attorney.

---

**6.** Appellee also avers that Appellant has been permanently enjoined from seeking restitution by the United States Bankruptcy Court for the Western District of Texas. Appellee refers us to language in an Amended Order Confirming Plan, in which the bankruptcy court states:
> ORDERED that the State Bar of Texas is hereby enjoined from pursuing Robert Allen Moore, President of the Law Offices of Moore & Associates d/b/a Moore & Associates, P.C., from monetary damages or restitution claims involving Mary and Blanche Taylor and the debt to be repaid through the Plan of Reorga-

nization herein confirmed. The State Bar of Texas is not prohibited, however, from pursuing disciplinary suits or proceedings against Robert Allen Moore, so long as such disciplinary suits or proceedings are not used as a means to seek repayment or collection of debts from the debtor or Robert Allen Moore.

However, given our finding that Appellant has never sought restitution from Appellee, we find that any injunction is not controlling for purposes of Appellee's reinstatement to the practice of law.